## W. DEVRIES & CO. *v.* MOSES HAYWOOD.

Whatever be the form of a transaction, or the words of the parties, there can be no contract (*here*, of sale) *without an intention* that there shall be one.

Whether or not a contract was intended in any particular case, is a question for the jury, upon all the facts and circumstances.

A false representation not acted upon by him to whom it is made, does not estop.

The maxim *ex turpi causa non oritur actio*, does not apply to prevent a party to a statement from maintaining an action in which it becomes necessary for him to show such statements to be false.

INTERPLEA, in attachment levied on goods, tried before *Buxton, J.*, at Fall Term 1869 of CUMBERLAND Court.

The following is the *case* sent up:

The plaintiffs had *attached* on the 3rd Dec. 1866; the interpleader claimed the property by virtue of a bill of sale from Phillips, dated 19th Nov. 1866; the attaching creditors resisted the claim on two grounds: 1. That the bill of sale was fraudulent. 2. That if the bill of sale were not fraudulent, and Haywood had acquired a valid title under it, yet that he had, prior to 3d Dec. 1866, the date of the attachment, parted with his title to one Forney Jernigan by a valid sale and delivery of the goods.

R. W. Hardie, late Sheriff of Cumberland, testified for the plaintiffs that: "While Sheriff of the county, on Saturday 1st Dec. 1866, having in my hands an attachment in favor of one Sowder against E. L. Phillips, I went to the

store on Hay Street, in Fayetteville, lately occupied by Phillips, for the purpose of making a levy. It was about 11 o'clock in the morning; the front door was closed; I entered at the back door, and found in the store Moses Haywood, Forney Jernigan, Duncan McLaurin and Wetmore Holmes. On making known my business, Haywood said to me: "*Yon can't levy on these goods; I have sold them to Forney Jernigan.*" Jernigan said, "*Yes, they are mine, I have bought them.*" I replied, "*I must levy, or have a bail bond.*" Haywood, Jernigan and McLaurin then retired into the shed part of the store, had a consultation, and returned. Haywood inquired if I had any other papers against Phillips besides the Sowder attachment, and on my answering *no,* he said he would sign the bond.

The parties were packing up the goods in boxes at the time I entered the store, and while I was there, the goods were being removed, Jernigan superintending the removal.

On the night of the same Saturday I saw the same goods at the auction store of John H. Cook. By this time the Devries attachment had been placed in my hands. I informed Cook of the fact, and placed the goods in charge of his son, on the Monday following, 3d Dec. 1866. I endorsed the levy on the Devries attachment. After doing so, I met Haywood, who said to me: "*I suppose you have levied on those goods.*" I replied, "*Yes, I am in a hurry now; come to the Court House, and I will furnish you a replevy bond.*" His answer was "*I won't replevy.*" I remarked, "*Then you will have to interplead.*" He answered, "*I can't interplead; I have sold the goods to Jernigan.*" He did not tell me then that they were his goods, and I have no recollection that he did so at any time."

John H. Cook testified: "I rented a room of my auction store to Forney Jernigan to place goods in, and on Saturday, 1st Dec. 1866, about noon, the goods were brought there on drays and taken in at the front door—these were the same goods afterwards levied on by Sheriff Hardie. That same

day, about sundown, while Jernigan and myself were in ·the store, where the goods were, Haywood came, and in his presence Jernigan stated that those were his goods, and he was going to take some of them home with him, and I did see him take off with him in his hands two or three pieces, a dress for his wife and a coat. Haywood and myself had but little to say—Jernigan did most of the talking. He and Haywood went off together about dark. About an hour later Sheriff Hardie levied the Devries attachment.

Duncan McLaurin testified: That he had been clerk of Phillips for two months, when Haywood took possession of the goods under the bill of sale, and continued the witness as clerk for himself. Forney Jernigan and Wetmore Holmes were also employed as clerks for him along with witness. That a short time before the levy of these attachments, not exceeding a day or two, the witness was informed by Haywood and Jernigan, that Haywood had sold out the goods to Jernigan. That during this time Jernigan was busy disposing of the goods, and claiming them as his own, with the assent of Haywood. Both parties assisted in the packing of the goods and sending them off to the auction room, and both manifested an interest in them. That Haywood told him he had disposed of the goods to Jernigan. That Haywood paid the witness for services as clerk of the store.

Evidence upon the second point.

Moses Haywood, the party interpleading, testified : "The goods never were sold by me to Jernigan; he never paid a cent for them."

The plaintiffs objected to the witness making this statement, and asked his Honor to rule it out; and upon his declining to do so, the plaintiff excepted.

The witness resumed : "I have no recollection of ever telling Sheriff Hardie that the goods were Jernigan's, and don't know that I ever said so in the presence of McLaurin. I may have said so for the purpose of saving the goods; I

reckon I might have said so ; and Jernigan might have said the same. If Jernigan sold any of his goods as his own before they were levied on, it was contrary to my orders. I sent him as a clerk to engage a room at Mr. Cook's auction store. The first day I took possession, I sold Jernigan six suits of cheap clothes, and those were the bundles he took off from Cook's, and they were never paid for. If he took off other clothes, besides these, from Cook's, I don't know of it. I have no recollection of saying to Sheriff Hardie : *"I can't interplead, I have sold the goods to Jernigan."* I told him, on meeting him Monday morning, that they were my goods, and he replied "It is just as I expected." I sent the goods to Cook's because I got his room cheaper than that where they were. The Phillips store I had rented for the balance of the year to Jackson and Pearce.

Upon the second point in the case, that is, the alleged sale by Haywood to Jernigan, his Honor charged the jury :

Whether a real sale or a sham sale was intended, is a question for the jury. If you shall find that it was a sham sale, then no property passed to Jernigan—as such a contrivance intended to deceive the Sheriff would not work a change of property, so as to render what really was the property of Haywood, subject to attachment for debts of Phillips.

The plaintiff excepted, and asked the following special instruction : That if the contract between Haywood was as stated in the testimony of McLaurin, Hardie and Cook, there was a sale of the goods to Jernigan, and the title passed to him.

His Honor declined to give the instruction as asked; but qualified it thus to the jury :

If you shall find that a real sale was intended to Jernigan, and the contract between Haywood and Jernigan was as stated in the testimony of McLaurin, Hardie and Cook, there was a sale of the goods to Jernigan and the title passed to him. If you shall find that a *real sale was in-*

*tended,* then every · thing which was necessary to be done to make a sale was done—and the plaintiffs are entitled to your verdict.

The plaintiff excepted. Verdict for the party interpleading; Rule discharged, and Appeal by the plaintiff.

*B. Fuller and Merrimon* for the appellant, cited *McLean* v. *Douglass,* 6 Ire. 233; *Cameron* v. *Big Marcellus,* 3 Jon. 83; *Broom's Maxims, ex dolo malo,* &c.; *Blossom* v. *VanAmringe,* Phil. Eq. 138; *Broom's Maxims, in pari dedicto,* &c.; *Bird* v. *Benton,* 2 Dev. 179; *Sasser* v. *Jones,* 3 Ire. Eq. 19; *Jones* v. *Sasser,* 1 D. & B. 402; *West* v. *Tilghman,* 9 Ire. 163.

The rule is not, that an estate is transferred, or property changed, but that a right is lost or forfeited so that a court of justice will not aid in its enforcement.

*Massey* v. *Belleisle,* 2 Ire. 176; *Fesperman* v. *Parker,* 10 Ire. 474; *Bessent* v. *Harris,* Phil. 542; *Smith* v. *Sasser,* 5 Jon. 391; *Marshall* v. *Flinn,* 4 Jon. 203; *State* v. *Brantley,* 63 N. C. 519, 2 Pars. Cont. 500; *Gainey* v. *Hays,* 63 N. C. 497.

*N. McKay and Phillips contra.*

READE, J. The objection to the ruling of his Honor in regard to the testimony of the witness Haywood, was abandoned in this court.

It is not controverted that the goods levied on as the property of the debtor, Phillips, were his property a short time before the levy: nor is it controverted that, before the levy, Phillips had sold the goods to the party interpleading, Haywood: nor that Haywood had the right to interplead, provided the property in the goods remained in him. But the plaintiff alleges that Haywood had sold the goods to one Jernigan, and thereby lost his right to be heard. If this were the state of facts, the present is a fruitless controversy; for whoever succeeds, the property will remain Jernigan's, and the

costs are the only matter of interest. The question is, did Haywood sell to Jernigan; and in this issue the burden of proof is on the plaintiff.

The plaintiff offered evidence tending to show a sale from Haywood to Jernigan, *i. e.,* that Haywood said *he* had sold them, and Jernigan said *he* had bought them; and there was evidence tending to show a delivery. Haywood offered evidence tending to show that there was no sale, and that whatever was said or done which had the appearance of a sale, was a mere contrivance between himself and Jernigan to " save the goods," and to keep the Sheriff from seizing his goods as the property of Phillips. Under this conflicting evidence, his Honor left it with the jury to say what was the true character of the transaction between Haywood and Jernigan;—explaining to them that if the parties *intended* a sale, it was a sale, and passed the title to Jernigan; but if it was only a sham or contrivance to deceive the Sheriff, and prevent him from taking Haywood's property for Phillips' debt, it could not be a sale. We think that instruction was right.

The plaintiff then asked for special instructions to the effect that if the testimony of the plaintiff's witnesses was believed, there was a sale from Haywood to Jernigan, without regard to the *intention* of the parties. His Honor gave the instructions with the qualification, that the facts were sufficient in *form* to constitute a sale, if it was the *intention* of the parties that they should; otherwise, there was no sale, The question intended to be presented is, whether, when the words and acts of parties are sufficient in form to make a contract, if so intended, the intention can be shown to be *variant from the ordinary meaning of the words and acts.* A contract is the agreement of two minds: the understanding and intention of the parties are the very gist of the matter. What was the agreement, the understanding, the intention, is always a question for the jury—whilst the legal effect of the agreement, is a question for the court. In other

words, the terms must be agreed upon by the parties or found by the jury, and then they are to be construed by the court. In our case the terms were not agreed upon; (indeed, it was not agreed that there was *any* contract at all); and therefore it was properly left to the jury. This would be true even if Jernigan were attempting to set up the contract. But he is not. The plaintiff is in the predicament of trying to set up a contract between other parties, when both parties deny that there was any contract between them.

It was also contended by the plaintiff, that inasmuch as Haywood had told the sheriff that he had sold the goods to Jernigan, and had deceived the sheriff, he was now estopped to deny it. It may be that if Haywood had told the Sheriff that the goods were the property of Phillips, and the Sheriff had been deceived thereby, and levied on them as the property of Phillips, Haywood would have been estopped to deny the title of Phillips, to the injury of the Sheriff or the plaintiff, whom he had deceived. But the Sheriff was pursuing the goods as the property of Phillips, and was not prevented or deceived by Haywood in that regard; and the fact that he told a falsehood, if he did, in regard to his transaction with Jernigan, in no way affected the Sheriff or the plaintiff: *Wallis* v. *Truesdell*, 6 Pick. 455.

Again, it was insisted by the plaintiff, that Haywood could not claim the property, because, according to his own showing, the transaction between him and Jernigan was a sham, a fraud, and that the maxin applies, *ex turpi causa non oritur actio.*

The answer is that Haywood claims nothing under that transaction, but claims against it, whatever it was, and under his purchase from the debtor Phillips, which was found to be fair.

Again, it was contended by the plaintiff, that the effect of the fraudulent transaction between Haywood and Jernigan was to pass the title to Jernigan as against Haywood, whatever might have been its effect as to others. Waiving

whatever objection there may be to the right of the plaintiff
to avail himself of a transaction like the one in question, in
which he has no interest, when neither of the parties seeks
to set it up,—the answer is that the jury have found that
there was *no transaction*, fraudulent or other, by which the
parties intended to pass the title out of Haywood to Jerni-
gan. If so, of course, there was no sale, as there can be no
contract against the intention of the parties. The admission
of evidence to show this, does not contravene the rule that
words and acts, nothing else appearing, are to be under-
stood in their ordinary acceptation, or the rule that when
the terms are ascertained, the legal effect is a question for
the Court.

There is no error.

PER CURIAM.                                Judgment affirmed.