NEIL E. LOY, Plaintiff v. LORM CORPORATION, MARL CORPORATION, L. W. MITCHELL, ALICE H. MINGES, and ROY W. WESCOTT, Defendants

No. 801SC771

(Filed 16 June 1981)

1. **Corporations § 4.1— majority shareholders—fiduciary duty to minority shareholders**

In North Carolina majority shareholders owe a fiduciary duty and obligation of good faith to minority shareholders as well as to the corporation.

2. **Corporations § 4.1— action by minority shareholder against majority—burden of proof**

Once a minority shareholder challenges the fairness of actions taken by the majority, the burden shifts to the majority to establish that its actions were in all respects inherently fair to the minority and undertaken in good faith.

3. **Corporations § 4.1— action by minority shareholder against majority—transfer of corporate assets to another corporation—breach of fiduciary duty—sufficiency of evidence**

Plaintiff minority shareholder made out a prima facie case that defendant majority shareholders breached the fiduciary duty owed to plaintiff as a minority shareholder in transferring the assets of the corporation to a corporation wholly owned by defendants where he presented evidence tending to show that the assets of the corporation were worth approximately $100,000 to $120,000; the corporate assets were transferred without consideration to the corporation wholly owned by defendants without a board of directors meeting and without notice to plaintiff; and plaintiff realized no benefit as a minority shareholder from this transfer of assets.

4. **Corporations § 6— shareholder's derivative action—no necessity for demand upon directors—dissipation of corporate assets—sufficiency of evidence**

Plaintiff minority shareholder was not required to make a demand upon the board of directors of a corporation before bringing a derivative action against directors of the corporation where plaintiff alleged that defendants constituted a majority of the board of directors at the times in question, and plaintiff's evidence was sufficient to establish a prima facie case that the three defendants harmed the corporation by wrongfully dissipating its assets to themselves through a corporation which they wholly owned.

5. **Corporations §§ 4.1, 25— preincorporation shareholders' agreement—binding effect on corporation**

The evidence on a motion for summary judgment raised genuine issues of material fact as to whether the individual defendants, incorporators, shareholders and directors of defendant corporation which owned property leased to a restaurant owned by the individual defendants and plaintiff, orally agreed prior to incorporation to permit plaintiff to buy a 25% stock interest in the corporation when he became financially able to do so in return for

Loy v. Lorm Corp.

plaintiff's agreement to supervise construction of the restaurant and to manage it when completed, and whether the agreement was binding on defendant corporation under the theory that it was intended by the individual defendants to be a preincorporation shareholders' agreement which was binding on the corporation or under the theory that the corporation adopted the shareholders' agreement by accepting its benefits with knowledge of its provisions.

**6. Evidence § 29.2— admissibility of business records**

In an action for breach of contract to permit plaintiff to purchase stock in a corporation, evidence of the corporation's tax returns, financial statements and other records was competent to establish damages for breach of contract and to establish the value of the total stock interest held in the corporation by the three individual defendants.

APPEAL by plaintiff from *Brown, Judge.* Order entered 19 March 1980 in Superior Court, DARE County. Heard in the Court of Appeals 3 March 1981.

Plaintiff, Neil E. Loy, a minority shareholder in Lorm, Inc. (Lorm) brought an individual action against Lorm's three majority shareholders (three defendants) and against another corporation, Marl, Inc. (Marl), which was wholly owned by the three defendants. As part of this same suit, Loy also brought a shareholders derivative action against Lorm. The trial court granted a summary judgment in favor of Marl and directed a verdict at the close of plaintiff's evidence in favor of the three defendants and Lorm.[1]

In 1964, the three defendants — Billy Mitchell, Alice Minges, and Roy Wescott — contacted Loy and proposed to finance the construction of a restaurant to be known as The Port O' Call Restaurant. Loy agreed to supervise the restaurant construction and manage it when completed. Loy and the three defendants formed a corporation, Lorm, to operate the business under the Port O' Call name; each paid $1,000 and received a twenty-five percent stock interest in the corporation. The three defendants independently also formed Marl, to finance the purchase of the land, the construction of the restaurant, and the purchase of the necessary restaurant equipment and supplies. Marl then leased the land, building and restaurant equipment to Lorm on a yearly basis. Loy alleges in his complaint that as partial consideration for his management services, the three defendants agreed to let

---

1. In Section II, *infra*, we discuss the applicability of the directed verdict to Lorm.

him buy a twenty-five percent stock interest in Marl when he could afford to do so. The three defendants deny that such an agreement was ever made.

From 1964 until 1976, Loy served as the general manager of the Port O' Call Restaurant making it "one of the most successful, profitable and well-known restaurants on the Outer Banks of North Carolina, . . ." During this time, Loy was paid a salary for his services as manager, and his salary was increased at various times over this ten-year period. Additionally, Loy's former wife worked at the restaurant providing assistance in its general operation without pay.

On 10 July 1975, Loy advised the three defendants that he "was ready, willing and able to purchase a 25% stock interest in Marl Corporation on the terms and conditions theretofore orally agreed." The three defendants denied that any such agreement existed and refused to sell to Loy stock in Marl. As a result of this disagreement, Loy resigned as the manager of the Port O' Call Restaurant but remained a shareholder in Lorm. Shortly after Loy's resignation, the three defendants formed Bar, Inc. (Bar) and without any consideration passing, transferred the assets of Lorm to Bar. In Spring 1977, the three defendants also sold a large amount of stock in Marl to a Frank Gajar for $300,000.00. Gajar then began operating the restaurant through his own corporation, Port O' Call, Ltd.

Loy further alleges in his complaint that as a result of these transactions, the three defendants (1) breached their fiduciary duty owed to Loy as a minority shareholder in Lorm; (2) engaged in self-dealing which harmed Lorm; (3) extracted profits from Lorm by having Marl and Lorm agree, over Loy's objections, to the payment of excessively high rental fees; and (4) breached their oral agreement with Loy that he could buy a 25% stock interest in Marl. Loy is before us, appealing from the entry of summary judgment for Marl and from the directed verdict in favor of the three defendants and Lorm.

*Leroy, Wells, Shaw, Hornthal, Riley & Shearin, by Norman W. Shearin, Jr., and Roy A. Archbell, Jr., for plaintiff appellant.*

*Aldridge, Seawell & Khoury, by Christopher L. Seawell, for defendant appellees.*

---

---

BECTON, Judge.

At the outset, it is important to emphasize that Lorm and Marl were closely-held corporations in which all three defendants were shareholders, directors and officers. The two corporations were formed at the same time with the same purpose — to establish the Port O' Call Restaurant.[2] The corporations had interlocking directorates with the three defendants firmly in control of both corporations. Plaintiff sued the three defendants in their capacities as shareholders, directors and officers of both corporations. Because of the multiple relationships shared by the three defendants with the two corporations, references to all of the defendants in the pleadings and testimony are difficult, but not impossible, to keep straight. However inartfully the pleadings are drawn, the complaint does sufficiently allege a claim for relief against the three individual defendants, against Lorm and against Marl.

I

Loy's first assignment of error is that the trial court committed error by directing a verdict for the three defendants at the close of the plaintiff's evidence. It is a well-established rule of law in North Carolina that:

> [i]n passing upon such a motion [for directed verdict], the court must consider the evidence in the light most favorable to the non-movant. [Citation omitted.] That is, the evidence in favor of the non-movant must be deemed true, all conflicts in the evidence must be resolved in his favor and he is entitled to the benefit of every inference reasonably to be drawn in his favor.

*Summey v. Cauthen*, 283 N.C. 640, 647, 197 S.E. 2d 549, 554 (1973); *see also Cutts v. Casey*, 278 N.C. 390, 180 S.E. 2d 297 (1971). After considering the evidence in the light most favorable to the non-movant (in this case the plaintiff, Loy), the trial court should deny the motion for directed verdict if "it finds 'any evidence more

---

2. Conflicting testimony appears in the record but seems to indicate that the name Marl was chosen by using the initials of each of the defendants and plaintiff — M-Mitchell; A-Alice; R-Roy; L-Loy. Likewise the name Lorm was supposed to be another combination of the same initials, but a typographical error in the incorporation papers resulted in the acronym Lorm rather than Larm.

than a scintilla' to support plaintiff's prima facie case in all its constituent elements." *Hunt v. Montgomery Ward & Co.*, 49 N.C. App. 638, 640, 272 S.E. 2d 357, 360 (1980) *quoting* 2 McIntosh, North Carolina Practice and Procedure 2d, § 1488.15 (Phillips Supp. 1970). In reviewing a trial court's decision to grant a directed verdict, an appellate court must ask itself the same question presented to the trial court, "namely, whether the evidence, when considered in the light most favorable to plaintiff, was sufficient for submission to the jury." *Kelly v. Harvester Co.*, 278 N.C. 153, 157, 179 S.E. 2d 396, 397 (1971); *Hunt v. Montgomery Ward & Co.* With our scope and standard of review established, we turn to plaintiff's legal arguments.

In ruling on the motion for directed verdict made by the three defendants in their capacity as shareholders in Lorm, the trial court decreed that:

3. The Defendant's motion for directed verdict on Plaintiff's claim for individual damages is allowed.

4. The Defendants' motion for directed verdict on the ground that Plaintiff's evidence is insufficient as a matter of law to make out a case against the Defendants is allowed.

**[1, 2]** It is conceded by the three defendants that in North Carolina majority shareholders owe a fiduciary duty and obligation of good faith to minority shareholders as well as to the corporation. As stated by the North Carolina Supreme Court:

[t]he devolution of unlimited power imposes on holders of the majority of the stock a correlative duty, the duty of a fiduciary or agent, to the holders of the minority of the stock, who can act only through them—the duty to exercise good faith, care, and diligence to make the property of the corporation produce the largest possible amount, to protect the interests of the holders of the minority of the stock, and to secure and pay over to them their just proportion of the income and of the proceeds of the corporate property. . . . It is the fact of control of the common property held and exercised, and not the particular means by which or manner in which the control is exercised, that creates the fiduciary obligation on the part of the majority stockholders in a corporation for the minority holders. Actual fraud or mis-

management, therefore, is not essential to the application of
the rule.

*Gaines v. Manufacturing Co.*, 234 N.C. 340, 344-45, 67 S.E. 2d 350,
353 (1951); *see also* Robinson, North Carolina Corporation Law
and Practice, § 9-11 at 196 and 198n.6 (2d ed. 1974). It is also well
established in North Carolina, and acknowledged by the three
defendants, that once a minority shareholder challenges the
fairness of the actions taken by the majority, the burden shifts to
the majority to establish that its actions were in all respects in-
herently fair to the minority and undertaken in good faith. *Hill v.
Erwin Mills, Inc.*, 239 N.C. 437, 444, 80 S.E. 2d 358, 363 (1954);
Robinson, *supra,* at §§ 9-12, 12-5.

[3] The three defendants take the position that the plaintiff's
own evidence established the fairness of their dealings with
Lorm. Our review of the record, however, does not support this
position, nor does it support the trial court's order of directed
verdict. Loy alleged, and sought to prove, that the three defend-
ants breached their fiduciary duty (1) by having their separate
corporation, Marl, charge Lorm with unreasonably high rents in
an effort to extract profits from Lorm, and (2) by dissipating the
assets of Lorm to themselves through Bar—a corporation which
they owned and operated. While Loy's evidence may not have
established that the rents charged to Lorm were unreasonable, he
did, in our opinion, present a prima facie case that the assets of
Lorm were drained from Lorm by the three defendants without
Loy sharing proportionately as a shareholder.

At trial, Loy presented plenary evidence that the assets[3] of
Lorm in 1976 totaled approximately $100,000 to $120,000; that
these assets were transferred, without consideration, to Bar—a
company owned by the three defendants; that this transfer was
completed without a board of directors meeting and without
notice to Loy; and that Loy realized no benefit as a minority
shareholder from this transfer of assets. Loy's expert witness—
Jack Adams, a certified public accountant—testified:

I do have an opinion of good will which was attributable to
Lorm Corporation, trading as Port O' Call Restaurant as of

---

3. Corporate assets may include among other things real property, equipment,
supplies, inventory, accounts receivable and *good will.*

January 1, 1976. Based on the tax returns for the years that you mentioned were provided to me, I would have to estimate that the good will for Lorm Corporation would be between $100,000 and $120,000, based on my opinion.

. . .

In my opinion the fair market value of Neil E. Loy's stock in Lorm Corporation [25% stock interest], trading as Port O' Call Restaurant, on January 1, 1976, based on my estimate of the net book value of Lorm Corporation, the net book value was a thousand dollars for twenty-five percent and then the good will of twenty-five to thirty thousand dollars would give a fair market value of twenty-six to thirty-one thousand dollars.

Moreover, Adams' analysis of Lorm's and Bar's tax returns revealed that:

In examining PX-1, which is a 1976 tax return for Bar, Inc., on the analysis of retained earnings for the year, it shows an increase to retained earnings for [assets] donated from Lorm Corporation $334.00. As to what that means, after seeing the Lorm Corporation tax return and Lorm shows a property distribution of that same amount, it would appear to me that it was property that was transferred from Lorm Corporation to Bar Corporation during 1976.

Loy testified that he never received any money from the transfer of Lorm's assets, nor did he ever receive any notification of a Lorm shareholders' meeting after he resigned as the manager of Port O' Call Restaurant. Defendant Billy Mitchell substantially corroborated this testimony when he was called as an adverse witness by Loy. Mitchell said:

Prior to transferring the assets of Lorm Corporation to Bar, Inc., we did not notify Mr. Loy that this transfer was about to take place. We did not have a directors meeting of Lorm Corporation before this donation of assets was made. We did not have a meeting of shareholders before this transfer was made. Lorm Corporation has never had a written lease agreement with Marl Corporation. As to the status of Lorm Corporation today, I would presume it is inactive because it didn't pay its state filings. In other words, it died a natural death.

The Business Corporation Act, Chapter 55 of the North Carolina General Statutes, mandates that fundamental changes in a corporation be made by vote of all the shareholders.[4] Corporate mergers and transfers of all the assets of a corporation in particular are required to be approved by a vote of all the shareholders. Moreover, "[t]he directors of the transferor corporation must adopt a resolution recommending the transfer and directing its submission to a vote at a meeting of shareholders. Written notice of the meeting must be given to each shareholder of record in the usual manner; . . ." Robinson, *supra*, at § 25-3. *See* G.S. 55-112(c)(1) & (2). Failure to conform to these mandates of the statute constitutes a breach of a director's fiduciary duty as well as a breach of the majority stockholders' duty to the minority.

Based on the evidence presented then, Loy made out a prima facie case that the three defendants breached the fiduciary duty owed to him as minority shareholder in Lorm. In making out such a case, the burden shifted to the three defendants to establish in defense that the transfer of Lorm assets to Bar was inherently fair to all the Lorm stockholders. The trial court, therefore, committed error in directing a verdict for the three defendants at the close of plaintiff's case. Accordingly, we reverse that judgment.

## II

In granting the defendants' motion for directed verdict, it is unclear if the trial court's order also included Loy's shareholders derivative suit against Lorm. In making the motion, defendants' counsel equivocally moved:

> That the plaintiff's evidence on whole is insufficient as a matter of law to make out any case against either Lorm . . . or against the individual defendants and Lorm Corporation, and I suppose Lorm Corporation is a nominal defendant, but I'll add them in, *although I don't suppose we can really represent the Lorm Corporation.* (Emphasis added.)

---

4. There are three well-recognized exceptions in which the board of directors of a corporation may make fundamental changes: (1) when the board of directors feels that the corporation is in a failing condition, and a major sale is necessary to meet corporate liabilities, G.S. 55-112(b)(1); (2) when the corporation is formed for the purpose of selling the corporate property and assets, G.S. 55-112(b)(2); and (3) when a transfer of assets is undertaken not to terminate the business, but to further it, G.S. 55-112(b)(3).

In its order, the trial court allowed "the Defendants' motion for directed verdict on the ground that Plaintiff's evidence is insufficient as a matter of law." No specific reference was made as to which of the defendants this order pertained.

**[4]** If the trial court intended for the directed verdict to apply to Loy's derivative suit, then it was granted in error. Loy alleged, and his evidence at trial was sufficient to support a jury finding, that the three defendants harmed Lorm by wrongfully dissipating its assets to themselves through their corporation, Bar. As a general rule, a shareholder in a derivative suit must allege that he demanded, unsuccessfully, that the corporation itself institute an action against the directors. *Jordan v. Hartness*, 230 N.C. 718, 55 S.E. 2d 484 (1949). No allegation is necessary however, when, as in this case, the defendants constitute a majority of the board of directors, and its is obvious that making such a demand on the corporation would be in vain. *Seaboard Air Line R. Co. v. Atlantic Coast Line R. Co.*, 240 N.C. 495, 82 S.E. 2d 771 (1954); *Swenson v. Thibaut*, 39 N.C. App. 77, 250 S.E. 2d 279 (1978), *reh. denied,* 296 N.C. 740, 254 S.E. 2d 181 (1979). Directors owe a duty of fidelity and due care in the management of a corporation and must exercise their authority solely for the benefit of the corporation and all its shareholders. *Belk v. Belk Dept. Stores, Inc.*, 250 N.C. 99, 108 S.E. 2d 131 (1959). For the reasons stated above and in Section I of this opinion, plaintiff has established a prima facie case that Lorm was harmed by the actions of its directors. Therefore, plaintiff's derivative suite should not have been dismissed at the close of plaintiff's evidence.

### III

**[5]** Loy also argues that the trial court committed error in granting a summary judgment in favor of Marl. Loy alleged in his complaint that the three defendants, as the owners of Marl, agreed to let Loy buy a 25% stock interest in Marl when he was financially able. Loy contends that this agreement by the three defendants bound Marl to the agreement. The three defendants deny that such an agreement was ever made. When the motion for summary judgment was being heard, the parties relied primarily on their pleadings. The three defendants, however, sought to bolster their motion with certain testimony given by Loy at an earlier deposition.

The purpose of a summary judgment motion is to eliminate a trial when, based on the pleadings and supporting materials, the trial court determines that only questions of law, not fact, are at issue. "The procedure [for a summary judgment motion] is designed to allow a 'preview' or 'forecast' of the proof of the parties in order to determine whether a jury trial is necessary. *Caldwell v. Deese,* 288 N.C. 375, 218 S.E. 2d 379 (1975). *See* Louis, 'Federal Summary Judgment Doctrine: A Critical Analysis,' 83 Yale L. J. 745 (1974)." *Nasco Equipment Co. v. Mason,* 291 N.C. 145, 149, 229 S.E. 2d 278, 281 (1976). Summary judgment, then, should be granted only when the pleadings and supporting materials show that no genuine issue as to any material fact exists, and the movant is entitled to a judgment as a matter of law. The burden is on the movant to establish that there are no material questions of fact in issue. *Nasco Equipment Co. v. Mason; Page v. Sloan,* 281 N.C. 697, 190 S.E. 2d 189 (1972); *Pridgen v. Hughes,* 9 N.C. App. 635, 177 S.E. 2d 425 (1970).

Rule 56(c) of the North Carolina Rules of Civil Procedure specifically provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

In order to determine, for Rule 56 purposes, if a genuine issue as to a material fact exists, our courts have held that:

> an issue is material if the facts alleged are such as to constitute a legal defense or are of such nature as to affect the result of the action, or if the resolution of the issue is so essential that the party against whom it is resolved may not prevail.

*Railway Co. v. Werner Industries,* 286 N.C. 89, 95, 209 S.E. 2d 734, 737 (1974).

Looking only at the pleadings and supporting material — Loy's deposition — we must determine if the trial court was correct in finding that Marl was entitled to a favorable judgment as a matter of law. We conclude that the pleadings and deposition do raise a material question of fact about (1) the existence of an

agreement between the three defendants and Loy with regard to future purchases of Marl stock, and (2) the effect of such an agreement on Loy's claim against Marl itself.

In Loy's first claim for relief, he alleges:

As an inducement to plaintiff to become involved in the management and operation of the Port O' Call Restaurant, and as consideration for his services in that regard, the individual defendants agreed in principle that plaintiff would receive an ownership interest in both Lorm Corporation, which was to be the "operating corporation" and Marl Corporation, which was to own the property on which the restaurant was to be built.

. . .

It was further agreed between plaintiff and the individual defendants, that upon the incorporation of Marl Corporation, the individual defendants would receive a 33⅓% stock interest in Marl Corporation and that thereafter, plaintiff would have the right during his employment to acquire from the individual defendants, a 25% stock interest in the Marl Corporation for a total purchase price equal to 25% of the original construction cost of the Port O' Call Restaurant.

. . .

Subsequent to the issuance of stock in Marl Corporation and Lorm Corporation, plaintiff continued in his capacity of supervising the construction of the Port O' Call Restaurant through completion and thereafter undertook complete responsibility for the management and operation of the said restaurant, . . . which was done with the express understanding and agreement of the parties hereto that an ownership interest in Marl Corporation was to be a part of the consideration to plaintiff for said services.

On or about July 10, 1975, plaintiff advised the individual defendants that he was ready, willing and able to purchase a 25% stock interest in Marl Corporation on the terms and conditions theretofore orally agreed. However, the individual defendants failed and refused to honor their commitment under the original oral employment agreement by refusing to convey to plaintiff shares in Marl Corporation.

Subsequent to the aforesaid demand by plaintiff in July of 1975, plaintiff made numerous demands of the individual defendants, and/or their agents, that they comply with their agreement to sell plaintiff a 25% interest in Marl Corporation in accordance with the original oral employment agreement, . . . plaintiff has an equitable ownership in 25% of the assets of Marl Corporation, and is, therefore, entitled to receive from the individual defendants 25% of the net proceeds from the operation of Marl Corporation since July 10, 1975, the date defendants were to transfer to the plaintiff a 25% stock interest in Marl Corporation.

It is clear, based on the pleadings, that a question of fact does exist as to whether the three defendants, as Marl incorporators, made an agreement in exchange for Loy's promise to supervise and manage the Port O' Call Restaurant. Notwithstanding this question of fact, Marl argues that the alleged agreement only establishes a possible claim against the three defendants individually, not against the corporate defendant, Marl. Loy's deposition—the only material offered by the defendants in support of the summary judgment motion—actually supports Loy's claim that his agreement was with the individual defendants in their representative capacity for Marl. In Loy's deposition, the following transpired:

Q. You state in your complaint that because this stock purchase agreement was not carried out by either Lorm *or Marl Corporation*, you have been damaged in the amount of $100,000, is that correct?

A. Yes.

Q. Did you ever have any dealings with the defendants when they were acting on behalf of Marl Corporation and promised in their capacities as stockholders and directors of the Marl Corporation to convey to you any stock in Marl Corporation?

A. Yes, this was my understanding.

If Loy can convince the jury that an agreement does exist, then a material question of fact also exists about the binding effect such an agreement would have on Marl. Although Marl was

not formed at the time the alleged agreement was entered into,[5] Marl may nevertheless be liable to Loy based on the three defendants' breach of such an agreement on two different theories. First, the agreement made by the three defendants as promoters and incorporators of Marl raises a question of fact about whether the agreement was intended by the three defendants to be a stockholders' agreement. This presents a question of fact which can only be decided by the trier of fact after considering all the circumstances surrounding the agreement. In *Wilson v. McClenny*, 262 N.C. 121, 136 S.E. 2d 569 (1964), Justice Sharp (later Chief Justice) found that an agreement to elect the plaintiff president for five years made by the promoters and subsequent shareholders of a closely-held insurance company was not violative of public policy. Indeed, the court held in *Wilson* that "[t]his preincorporation contract between the parties was intended to serve as a stockholders' agreement after incorporation. *Id.* at 127, 136 S.E. 2d at 574. Once interpreted as a shareholders agreement, the *Wilson* court relied on the Business Corporation Act, G.S. 55, *et seq.*, to find the preincorporation agreement binding on the promoters in their capacity as shareholders.

Likewise, if Loy can show that a preincorporation agreement was made in this case and was intended by the incorporators to be a shareholders agreement, then under the recent case of *Snyder v. Freeman*, 300 N.C. 204, 266 S.E. 2d 593 (1980), Marl itself may be bound by the agreement and liable for its breach. In *Snyder*, all the shareholders of a closely-held aviation corporation agreed in writing to sell 6,000 shares of stock to a third party who was interested in investing in the corporation. As part of that agreement, the shareholders promised to use some of the money received from the sale to pay off an outstanding debt owed to one of the corporation's employees — the plaintiff. The corporation was not a signatory to the agreement, and there was nothing in the agreement indicating that the individual defendants were acting for the corporation. After the sale was completed, the plaintiff-employee never received any money from the corporation or from the shareholders as payment for the pre-existing debt. In reversing this court, the Supreme Court said: "we think under these circumstances plaintiff may prove the corporation bound by

---

5. Plaintiff alleges that the stock purchase agreement was made by the defendants in late 1964 and that Marl and Lorm were incorporated after that time.

the [shareholders] agreement, notwithstanding that the corporation itself was not a signatory thereto." *Id.* at 210, 266, S.E. 2d at 597. In reaching this decision, the Supreme Court held:

> Under some circumstances, the action of *all* the shareholders of a close corporation bind the corporation even if the corporation is considered to be a legal entity separate from the shareholders. . . . The contract of the owners of all shares will be regarded as binding on the corporation if so intended.

*Id.* at 210, 266 S.E. 2d at 597-98. *See* 1 O'Neal, Close Corporations § 5.28 (1971).

In the case at bar, the three defendants were sued in their capacities as shareholders, directors and officers of Marl. If Loy can show (1) that a preincorporation agreement was made; (2) that the three defendants intended for this agreement to be a shareholders agreement; (3) that all the shareholders of Marl made the agreement; and (4) that they intended to bind Marl, then Loy can establish that Marl should be bound by the agreement. Loy made these allegations, and his deposition supports his complaint. The pleadings, then, raise a material question of fact about the intent of the three defendants in their capacities as incorporators and shareholders of Marl to enter into an agreement binding Marl. It is well established that "[w]hether mutual assent is established and whether a contract was intended between parties are questions for the trier of fact. *Storey v. Stokes*, 178 N.C. 409, 100 S.E. 689 (1919); *Devries v. Haywood*, 64 N.C. 83 (1870)." 300 N.C. at 217, 266 S.E. 2d at 602.

The presence of a writing in *Snyder* and the lack of one in this case is no bar to Loy's claim. North Carolina has no statute of frauds requiring a writing to prove a contract of this nature. In this case, an oral contract, if proven, would be binding with the equal force of a written one. The key, then is that

> [a] shareholder agreement, whether executed at a formal stockholders' meeting or by informal action [like an oral agreement], can bind the corporation when the shareholders are acting on behalf of the company; however, the courts hold that the corporation will be bound by such a contract only if all the stockholders are parties.

Note, *Close Corporations,* 16 Wake F. L. Rev. 975, 980 (1980). *See* 1 O'Neal, *supra,* § 5.28 at 100 and 101n.4. It follows then that just as the plaintiff in *Snyder* was given a chance to show that the agreement of all the shareholders was "tantamount to a promise by the signatories, *to cause the corporation* to issue the stock. . ." 300 N.C. at 222, 266 S.E. 2d at 604, so should Loy in this case be permitted to show that the three defendants' agreement was intended to bind Marl in the issuance of stock to Loy.

The second theory under which Marl may be held liable to Loy is by its adoption of the preincorporation agreement. Preincorporation agreements are entered into for a variety of reasons including to solicit stock subscriptions, to incorporate and to purchase materials to start up the corporation. Additionally,

> [p]reincorporation agreements include contracts between third parties and the promoters or other persons acting on behalf of the corporation. Sometimes these contracts play a very important part in securing leases, options, property rights, supply contracts and other arrangements that will be favorable for the new corporation.

Robinson, *supra,* at § 2-4.

Loy contends that the agreement was essentially a "preincorporation agreement" between Marl's promoters and a third party (Loy), made to secure an experienced manager for the restaurant to be built by Marl and operated by Lorm. Although the agreement was allegedly made by the three defendants as incorporators, the incorporators were also the subsequent directors of Marl and fully aware of the agreements they made prior to incorporation. After an agreement is made, the corporation, once formed, may adopt the contract by accepting its benefits with the knowledge of the contract's provisions; this adoption will bind the corporation to the terms of the preincorporation agreement. *McCrillis v. A & W Enterprises, Inc.,* 270 N.C. 637, 155 S.E. 2d 281 (1967); *see also Beachboard v. Southern Ry. Co.,* 16 N.C. App. 671, 193 S.E. 2d 577 (1972), *cert. denied,* 283 N.C. 106, 194 S.E. 2d 633 (1973).

In this case, Loy alleged that the agreement entered into by the three defendants was part consideration for his agreement to supervise the restaurant construction and manage it once com-

pleted. Assuming these allegations are true, Loy should be permitted to show that Marl accepted the benefits of the agreement with full knowledge of the agreement's provisions. Loy alleged that he made Port O' Call a successful and going enterprise. He further alleged that Marl benefited by having him supervise the restaurant construction. In all likelihood, Loy would not have agreed to join the defendants' operation without the assurance that he could buy into Marl and share in the rental income paid by Lorm. Without Loy, the Port O' Call Restaurant might not have been a success, and as a result, Marl might not have been able to collect and raise the restaurant's rent over the years.

The pleadings and supporting deposition do raise a material issue of fact as to the existence of an agreement by the three defendants *and* as to the effect of such an agreement on Marl. Given these questions of material fact, the trial court's grant of summary judgment for Marl was in error, and we therefore reverse that judgment.

## IV

[6] Because we hold that Loy should be permitted to offer evidence against Marl for breach of contract, he is also entitled to introduce into evidence the tax returns, financial statements and corporate records of Marl. This evidence is highly relevant. It must be introduced in order for Loy to establish damages for breach of contract and to establish the value of the total stock interest held by the three defendants in Marl.

In summary, then, the trial judge committed error in (1) directing a verdict for the three defendants; (2) directing a verdict for Lorm; (3) granting summary judgment in favor of Marl; and (4) excluding from evidence the financial records of Marl.

For these reasons, we

Reverse.

Judge VAUGHN and Judge WELLS concur.