Upchurch v. Sapp, 2020 NCBC 71.

STATE OF NORTH CAROLINA

ALAMANCE COUNTY

JAMES B. UPCHURCH, JR.,

    Plaintiff, Counterclaim
Defendant, and Third-Party
Defendant,

v.

CORBIN SAPP; LUANN MANER;
BRETT DEVRIES; ARTHUR a/k/a
"DUKE" THOMAS; MICHAEL
GLICK; and KELLY GLICK,

    Defendants and Counterclaim
Plaintiffs,

and

WTG BURLINGTON, INC.,

    Third-Party Plaintiff.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 778

**ORDER AND OPINION ON
DEFENDANTS' MOTION TO DISMISS**

1.    James B. Upchurch, Jr. is a shareholder of WTG Burlington, Inc. He was also its sole director and officer until his fellow shareholders recently removed him. Describing his removal as a coup, Upchurch has sued the other shareholders. They in turn have moved to dismiss all claims under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. (ECF No. 8.) For the following reasons, the Court **GRANTS** the motion.

> *Edmisten & Webb Law, by William Woodward Webb, for Plaintiff James B. Upchurch, Jr.*
>
> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Eric M. David and Katarina K. Wong, for Defendants Corbin Sapp, Luann Maner, Brett Devries, Arthur "Duke" Thomas, Michael Glick, and Kelly Glick.*

*Oertel, Koonts & Oertel, PLLC,* by Franklin Paul Koonts and Geoffrey K. Oertel, *for Third-Party Plaintiff WTG Burlington, Inc.*

Conrad, Judge.

## I.
## BACKGROUND

2. Formed in 2015, WTG Burlington is a small business that operates a restaurant named Wings to Go. (*See* Compl. ¶¶ 3, 19, ECF No. 3.) The company has six shareholders: Upchurch, Brett Devries, Michael Glick, Luann Maner, Corbin Sapp, and Arthur Thomas. (*See* Compl. ¶ 4.) Upchurch holds the largest interest at around forty percent and, until January 2020, served as WTG Burlington's general manager and its only director and officer. (*See* Compl. ¶¶ 3, 4.)

3. Shortly after forming WTG Burlington, the shareholders executed a Stockholders' Agreement to govern share transfers and related issues. (*See* Compl. ¶ 3; Compl. Ex. A ["Stockholders' Agrmt."].) Of note here, Upchurch obtained an option to buy shares held by Sapp, Thomas, Glick, and Maner (abbreviated as the STGM Shareholders in the agreement):

> As and when the STGM Loans shall have been paid and satisfied in full, Upchurch shall have the option, but not the obligation, at any time following the date of such payment . . . to purchase any part or all of the STGM Shares by giving a written notice . . . to the STGM Shareholders of the exercise of the option and the extent thereof.

(Stockholders' Agrmt. § 7A; *see also* Stockholders' Agrmt. § 2(n).) The STGM Loans are loans totaling over $300,000 made by these four individuals. (Stockholders' Agrmt. § 2(l).)

4. This case arises from events beginning in late 2019, when Devries allegedly "engineered" a "coup" to oust Upchurch. (Compl. ¶ 7.) The coup began with the

removal of Upchurch as general manager for alleged misconduct and the retention of one of Devries's business partners to replace him. (*See* Compl. ¶¶ 7, 11.) Then Devries and the other shareholders began holding meetings without notice to Upchurch. (*See* Compl. ¶ 8.) Around the same time, Devries and Sapp claimed to be officers and filed official documents with the Secretary of State on WTG Burlington's behalf. (*See* Compl. ¶¶ 9, 10.) The coup culminated in the election of new officers and directors—and, thus, the removal of Upchurch from his positions—at a properly noticed shareholder meeting in January 2020. (*See* Compl. ¶ 10.) At some point during these events, WTG Burlington stopped paying some of its debts, resulting in damage to Upchurch as guarantor. (*See* Compl. ¶ 12.)

5. Upchurch remains the largest shareholder of WTG Burlington. He alleges that he is "ready, willing and able" to exercise his option to buy the shares of Sapp and Maner, which would give him a majority interest. (Compl. ¶ 14.) Sapp and Maner have refused. According to Upchurch, Sapp and Maner "have rejected such acquisition in the absence of Plaintiff satisfying other terms and conditions not in" the Stockholders' Agreement. (Compl. ¶ 14.)

6. Upchurch filed this suit against all five of his fellow shareholders and Glick's wife ("Defendants"). He claims that Sapp and Maner have breached the Stockholders' Agreement. In addition, he claims that all Defendants have committed unfair or deceptive trade practices under N.C.G.S. § 75-1.1 and breached fiduciary duties owed to WTG Burlington and to Upchurch. Defendants have responded with

counterclaims, and WTG Burlington has intervened to assert its own claims against Upchurch.

7. Defendants have also moved to dismiss each of Upchurch's claims. After full briefing, the Court held a hearing on October 5, 2020. The motion is ripe for resolution.

## II.
## ANALYSIS

8. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604, 517 S.E.2d 121, 124 (1999) (citation and quotation marks omitted). The motion should be granted only when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736–37 (2018) (citation and quotation marks omitted). In deciding the motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences "in the light most favorable to" the nonmoving party. *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332, 828 S.E.2d 467, 471 (2019) (citation and quotation marks omitted). The Court also may consider documents "attached to and incorporated within [the] complaint." *Weaver v. St. Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007).

## A. Breach of Contract

9. Upchurch claims that he has an option to buy the shares held by Sapp and Maner and that they breached the Stockholders' Agreement by refusing to sell. Sapp and Maner argue that the option isn't ripe. The Stockholders' Agreement, they contend, requires Upchurch to repay over $300,000 in loans before exercising his option, yet he has not pleaded that he did so. (*See* Br. in Supp. 4–5, ECF No. 9.)

10. To state a claim for breach of contract, a plaintiff must allege that a valid contract exists and was breached. *See Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). If the contract "contains some condition precedent to defendant's liability," the plaintiff must also allege that the condition has been met. *Beachboard v. S. Ry. Co.*, 16 N.C. App. 671, 681, 193 S.E.2d 577, 584 (1972) (citation omitted); *see also* N.C. R. Civ. P. 9(c). "A condition precedent is a fact or event that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty." *Mosely v. WAM, Inc.*, 167 N.C. App. 594, 600, 606 S.E.2d 140, 144 (2004) (citation omitted).

11. Section 7A of the Stockholders' Agreement states that Upchurch "shall have the option" to buy the shares of Sapp and Maner "[a]s and when the STGM Loans shall have been paid and satisfied in full" and "following the date" of repayment. (Stockholders' Agrmt. § 7A.) Plainly, the loan repayment is a condition precedent that must occur before Upchurch's option ripens. *See Craftique, Inc. v. Stevens & Co.*, 321 N.C. 564, 567, 364 S.E.2d 129, 131 (1988) ("The use of language such as 'when,' 'after,' and 'as soon as' clearly indicates that a promise will not be performed except

upon the happening of a stated event, i.e., a condition precedent."). But the complaint does not allege, even generally, that this condition has been met. (*See* Compl. ¶¶ 13, 14, 16.) At most, the complaint alleges that Upchurch is "ready, willing and able" to buy the shares. (Compl. ¶¶ 14, 16.)

12. Upchurch doesn't deny any of this. Rather, he argues that Sapp and Maner have tried to impose even more conditions on the option right, beyond those stated in section 7A. (*See* Opp'n 2–3, ECF No. 18.) Even if that is true, it does not set aside Upchurch's obligation to allege satisfaction of the condition precedent that actually appears in section 7A. He has not done so and, as a result, has not stated a claim for breach of the Stockholders' Agreement.

13. The Court grants the motion to dismiss the claim for breach of contract.

## B. Section 75-1.1

14. Upchurch asserts a claim for unfair or deceptive trade practices against all Defendants. Seeking to dismiss the claim, Defendants contend that section 75-1.1 does not apply to shareholder disputes of the sort alleged in the complaint. (*See* Br. in Supp. 5–8.)

15. The General Assembly has declared that "unfair or deceptive acts or practices in or affecting commerce" are "unlawful." N.C.G.S. § 75-1.1(a). "As construed by our Supreme Court, this language is broad enough 'to regulate a business's regular interactions with other market participants' but not so broad as to capture conduct 'solely related to the internal operations' of a business." *Brewster v. Powell Bail Bonding, Inc.*, 2018 NCBC LEXIS 76, at *16 (N.C. Super. Ct. July 26,

2018) (quoting *White v. Thompson*, 364 N.C. 47, 51–52, 691 S.E.2d 676, 679 (2010)). Thus, "any unfair or deceptive conduct contained solely within a single business is not covered by" section 75-1.1. *White*, 364 N.C. at 53, 691 S.E.2d at 680.

16. All the alleged wrongdoing here was internal to WTG Burlington. Liberally construed, the complaint alleges that one or more Defendants held shareholder meetings without proper notice, removed Upchurch as general manager without cause, appointed a new general manager affiliated with Devries, acted as officers without authority, and failed to pay the company's debts. (*See* Compl. ¶ 19.) These are internal disputes about management and corporate governance "having nothing to do with the type of unfair market conduct section 75-1.1 was designed to address." *Brewster*, 2018 NCBC LEXIS 76, at *16–17 (collecting cases); *see also Morgan v. Turn-Pro Maint. Servs., LLC*, 2020 NCBC LEXIS 5, at *33 (N.C. Super. Ct. Jan. 15, 2020) (dismissing claim relating to "purely internal dispute" about authority to act on company's behalf); *Comput. Design & Integration, LLC v. Brown*, 2018 NCBC LEXIS 216, at *82–83 (N.C. Super. Ct. Dec. 10, 2018) (dismissing claim based on "acts related to one member's buyout of another member's interest in an LLC"); *Kane v. Moore*, 2018 NCBC LEXIS 184, at *13–15 (N.C. Super. Ct. Dec. 4, 2018) (dismissing claim involving diversion of corporate opportunities to "third-party businesses" controlled by LLC member); *LLG-NRMH, LLC v. N. Riverfront Marina & Hotel, LLLP*, 2018 NCBC LEXIS 105, at *10–11 (N.C. Super. Ct. Oct. 9, 2018) (dismissing claim based in part on dispute between LLC members about "alleged interference with restaurant management").

17.    Upchurch points to the fact that his replacement as general manager came from outside the company.  (*See* Opp'n 5.)  Even so, a dispute about the hiring of a general manager is an internal dispute about company management.  The tangential involvement of outsiders "does not change the fundamental character of the dispute." *JS Real Est. Invs. LLC v. Gee Real Est., LLC*, 2017 NCBC LEXIS 104, at *21 (N.C. Super. Ct. Nov. 9, 2017); *see also Kane*, 2018 NCBC LEXIS 184, at *13–15; *LLG-NRMH*, 2018 NCBC LEXIS 105, at *11–13; *Potts v. KEL, LLC*, 2018 NCBC LEXIS 24, at *15 (N.C. Super. Ct. Mar. 27, 2018).

18.    At bottom, this is a dispute among shareholders.  The alleged wrongdoing concerns the internal operations of a single market participant, is not in or affecting commerce, and therefore does not support a claim under section 75-1.1.  The Court grants the motion to dismiss the claim for unfair or deceptive trade practices.

### C. Breach of Fiduciary Duty

19.    Upchurch also asserts his claim for breach of fiduciary duty against all Defendants.  This claim is alleged in highly general terms.  (*See* Compl. ¶ 22.)  Although the complaint doesn't clearly say so, Upchurch has clarified his intent to assert the claim directly, not derivatively on behalf of WTG Burlington.  (*See* Opp'n 7.)  As elucidated in his brief, Upchurch's theory is that Defendants are majority or controlling shareholders and, in that capacity, breached fiduciary duties owed to minority shareholders (meaning Upchurch).  (*See* Opp'n 10–12.)  Defendants move to dismiss the claim on several grounds, including that the complaint fails to allege facts to support the existence of a fiduciary relationship.  (*See* Br. in Supp. 13–15.)

20.     "As a general rule, shareholders do not owe a fiduciary duty to each other or to the corporation." *Freese v. Smith*, 110 N.C. App. 28, 37, 428 S.E.2d 841, 847 (1993). Majority shareholders, however, have a duty to protect the interests of the minority. *See Gaines v. Long Mfg. Co.*, 234 N.C. 340, 344, 67 S.E.2d 350, 353 (1951).

21.     Here, no single Defendant is a majority shareholder.  Upchurch argues that Defendants, as a group, should be treated as majority shareholders because their aggregate interest is nearly sixty percent.  (*See* Opp'n 10.)  In support, he cites *Loy v. Lorm Corp.*, 52 N.C. App. 428, 278 S.E.2d 897 (1981).  There, the Court of Appeals allowed a minority shareholder to pursue relief against three fellow shareholders who together held a majority interest, served as corporate "directors and officers," were "firmly in control" of the corporation, and had common interests stemming from their related, jointly owned business.  *Id.* at 431, 278 S.E.2d at 900.  But the defendants in that case conceded that they were collectively majority shareholders, so the Court of Appeals did not address the circumstances in which a group of minority shareholders effectively becomes a controlling majority.  *See id.* at 432, 278 S.E.2d at 901.

22.     In any event, the allegations in the complaint bear no resemblance to *Loy*. Upchurch claims, for example, that he was the sole director and officer during the relevant period.  (*See* Compl. ¶ 3.)  Although Upchurch's brief argues that Defendants "acted in concert," (Opp'n 10), his complaint says nothing of the sort.  There are no allegations that Defendants acted in concert, had a common plan, or even held common interests.  At most, the complaint pins the supposed coup on Devries and alleges that the others "ratif[ied]" his actions.  (Compl. ¶ 11.)  Indeed, the complaint

does not identify any actions taken by Maner, Thomas, or the Glicks, apart from shareholder votes. These allegations, taken as true, do not show that Defendants formed a majority bloc from their minority interests. *See United Leasing Corp. v. Guthrie*, 192 N.C. App. 623, 634, 666 S.E.2d 504, 511 (2008) (holding that complaint did not adequately allege that defendant "acted in concert with others" to convert property); *cf. Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *19–21 (N.C. Super. Ct. June 19, 2019) (noting "the obvious difference between backing a majority coalition and exercising majority control as of right" when assessing whether LLC members owed fiduciary duties to each other).

23. As an alternative, Upchurch argues that Defendants, individually, are controlling minority shareholders. (*See* Opp'n 10–12.) "[O]ur Supreme Court has not decided whether a minority shareholder exercising actual control over a corporation owes a duty to other shareholders." *Panzino v. 5Church, Inc.*, 2020 NCBC LEXIS 17, at *12 (N.C. Super. Ct. Feb. 12, 2020) (citing *Corwin*, 371 N.C. at 616, 821 S.E.2d at 737). Regardless, Upchurch has not alleged that any individual Defendant exercised actual control over WTG Burlington. As noted, Upchurch alleges that *he* was the sole director and officer. (*See* Compl. ¶ 3.)*

24. In short, Upchurch has not adequately alleged the existence of a fiduciary relationship, which is an essential element of the claim. *See Dalton v. Camp*, 353

---

* Upchurch relies heavily on *Brewster*, which denied a motion to dismiss a claim for breach of fiduciary duty against minority shareholders. The reasoning in *Brewster* offers no support for Upchurch. There, the Court followed an appellate decision that was later reversed by the Supreme Court in *Corwin*. *See Brewster*, 2018 NCBC LEXIS 76, at *10. In addition, the complaint in *Brewster* alleged that the minority shareholders acted in concert and exercised control over the corporation—allegations that are absent here.

N.C. 647, 651, 548 S.E.2d 704, 707 (2001); *Bennett v. Bennett*, 2019 NCBC LEXIS 19, at *16 (N.C. Super. Ct. Mar. 15, 2019). The Court therefore grants the motion to dismiss his claim for breach of fiduciary duty.

III.
CONCLUSION

25. For these reasons, the Court **GRANTS** the motion. In its discretion, the Court dismisses the claims for breach of contract and breach of fiduciary duty without prejudice. The section 75-1.1 claim is dismissed with prejudice.

**SO ORDERED**, this the 8th day of October, 2020.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases