HOWARD L. FREESE v. GEORGE R. SMITH

No. 9226SC45

(Filed 4 May 1993)

**1. Pleadings § 33.3 (NCI3d) — motion to amend — additional claim — denial not abuse of discretion**

The trial court did not abuse its discretion in the denial of plaintiff's motion to amend his complaint in an action arising from the sale of corporate stock on the ground that defendant would be unduly prejudiced by the amendment where plaintiff sought to add a claim under N.C.G.S. § 78A-56(a)(2); a claim under this statute would shift the burden of proof to defendant; plaintiff's amendment was more than two years after the contract of sale and was thus outside the limitation contemplated by N.C.G.S. § 78A-56(f); and discovery had been completed and the case had been scheduled for trial at least once.

**Am Jur 2d, Pleading §§ 306 et seq.**

**2. Fraud, Deceit, and Misrepresentation § 14 (NCI4th) — sale of corporate stock — concealment of facts — common law fraud — sufficiency of evidence**

Plaintiff investor's evidence was sufficient for the jury on the issue of common law fraud by defendant majority shareholder in the sale of company stock to plaintiff where it tended to show that plaintiff invested $250,000 in the company in exchange for a 45 percent ownership interest; defendant failed to disclose to plaintiff (1) a consultant's recommendation against selling the irrigation portion of the business to defendant's son and that the company needed an infusion of $1.5 million to remain solvent, (2) a settlement which included a confession of judgment for $500,000, a return of inventory, a cash payment of $50,000 and monthly payments of $10,000, (3) an agreement for the company to indemnify defendant for any loss on his personal guaranty of a loan from NCNB, (4) that continuation of the NCNB loan was contingent upon the injection of $500,000 into the company from outside investors, and (5) the final version of the accountant's report; the irrigation division sold to defendant's son lost less money than represented by defendant to plaintiff; and although plaintiff investigated the company, he did not know the status of the

FREESE v. SMITH

[110 N.C. App. 28 (1993)]

critical transactions because they were handled exclusively by defendant.

**Am Jur 2d, Fraud and Deceit §§ 144 et seq.**

**Duty to disclose material facts to stock purchaser. 80 ALR3d 13.**

3. **Frauds, Statute of § 32 (NCI4th) — statute of frauds — affirmative defense — failure to plead**

Defendant may not assert on appeal the statute of frauds set forth in N.C.G.S. § 25-8-319 as a defense to plaintiff's action for breach of contract in the sale of corporate stock where defendant neither pled nor otherwise raised the statute of frauds as a defense in the trial court.

**Am Jur 2d, Statute of Frauds §§ 589 et seq.**

4. **Corporations § 126 (NCI4th) — director-majority shareholder — breach of fiduciary duty to minority shareholder**

Plaintiff minority shareholder's evidence was sufficient for the jury on the issue of defendant director-majority shareholder's breach of fiduciary duty by repaying himself loans he made to the corporation, preferentially repaying a corporate debt that he guaranteed, and repaying debts to a company he predominantly owned while the corporation was experiencing financial difficulties and after plaintiff had invested $250,000 in the corporation for a 45 percent interest therein.

**Am Jur 2d, Corporations §§ 728 et seq.**

5. **Costs § 36 (NCI4th) — costs and attorney's fees — existence of justiciable issues**

The trial court's award of costs and attorney's fees to defendant pursuant to N.C.G.S. § 6-21.5 is vacated where the appellate court held that plaintiff's evidence was sufficient for the jury on issues of fraud, breach of contract and breach of fiduciary duty so that justiciable issues did exist.

**Am Jur 2d, Costs §§ 72-86.**

Appeal by plaintiff from order entered 8 November 1990 by Judge Shirley Fulton, and orders entered 23 July 1991 and 26

**FREESE v. SMITH**

[110 N.C. App. 28 (1993)]

July 1991 by Judge Robert M. Burroughs in Mecklenburg County Superior Court. Heard in the Court of Appeals 9 December 1992.

*Horack, Talley, Pharr & Lowndes, P.A., by Neil C. Williams, for plaintiff-appellant.*

*Weinstein & Sturges, P.A., by Thomas D. Myrick and James P. Crews, for defendant-appellee.*

LEWIS, Judge.

The facts of this case arise out of a stock purchase agreement between Howard Freese (the "plaintiff") and George Smith (the "defendant") for shares in E. J. Smith & Sons Company ("EJS"), a company owned almost exclusively by defendant. EJS was a wholesale distributor of turf maintenance and irrigation equipment. However, in 1987, EJS was in financial difficulty and the defendant began to seek new capital for EJS. Defendant employed the services of Ronald Norelli to conduct a strategic feasibility study. It was the opinion of Mr. Norelli that EJS needed an infusion of $1.5 million in capital to survive, and contrary to the defendant's plan the irrigation division of EJS should not be sold to defendant's son. Mr. Norelli also recommended that if EJS did not receive the $1.5 million infusion of capital then an orderly dissolution of EJS would be necessary. Unhappy with these recommendations, defendant discharged Mr. Norelli and hired the Finley Group for further consultation. Late in 1987, seeking to generate more capital for EJS, Tim Finley of the Finley Group approached plaintiff to see if he was interested in investing in EJS. After doing extensive independent research, plaintiff invested $250,000 in EJS in February of 1988 in exchange for a 45% ownership interest in the company and assumed the duties of President of EJS.

After plaintiff's investment the business prospects of EJS declined drastically and on 7 November 1988, defendant terminated plaintiff's employment. Eventually, EJS was forced into involuntary bankruptcy by three of its creditors. Plaintiff seeks damages for breach of duty of good faith, fraud, breach of fiduciary duty, breach of contract, rescission, unjust enrichment, and unfair and deceptive trade practices. After numerous pretrial motions and volumes of discovery, this matter came to trial on 15 July 1991. At the conclusion of plaintiff's evidence defendant moved for and was granted a directed verdict on all claims. Plaintiff appeals.

FREESE v. SMITH

[110 N.C. App. 28 (1993)]

I.

[1]   In his first assignment of error, plaintiff claims that the trial court erred in denying his motion to amend his complaint approximately 9 months prior to trial. We do not agree. When the complaint in this action was originally filed, plaintiff was represented by the law firm of James, McElroy & Diehl, P.A. Sometime after defendant's answer, but prior to trial, they were allowed to withdraw and plaintiff engaged the services of Horack, Talley, Pharr & Lowndes. On 12 October 1990, plaintiff's new attorney filed a motion to amend plaintiff's complaint to include a cause of action under N.C.G.S. § 78A-56(a)(2) which provides in pertinent part:

(a) Any person who: . . .

(2) Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of the untruth or omission), *and who does not sustain the burden of proof that he did not know*, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person purchasing the security from him . . . .

N.C.G.S. § 78A-56(a)(2) (Cum. Supp. 1992) (emphasis added).

When plaintiff's new counsel filed the motion to amend, almost two years had elapsed since the filing of the original complaint. During those two years all of the pretrial discovery, which consisted of over 3000 documents and many days of depositions, had been completed and the case had already been scheduled for trial at least once. At the request of plaintiff and with the consent of defendant, the original trial date of 11 June 1990 was rescheduled for the week of 1 October 1990. Again at the request of plaintiff, on 13 September 1990 the parties entered into a consent order to move the trial to 19 November 1990. However, no Civil Session of Superior Court was scheduled in Mecklenburg County for the week of 19 November 1990 and the trial was reset for the next available date which was 15 April 1991.

Plaintiff's motion to amend was not actually heard until 2 November 1990, two weeks prior to the scheduled trial date of 19 November 1990. The record is not clear whether plaintiff's motion was made before or after the trial date was moved to 15

April 1991, but based upon the evidence available, the trial court denied plaintiff's motion to amend and made detailed findings of fact in support of its conclusion. The trial court noted that plaintiff's amended complaint sought to add a cause of action under N.C.G.S. § 78A-56(a)(2), but that § 78A-56(f) provided that no person could sue under that section more than two years after the contract of sale. There is no doubt that plaintiff's amendment was outside the two years contemplated by N.C.G.S. § 78A-56(f). In addition, the trial court noted that a cause of action under § 78A-56(a)(2) would have the effect of shifting the burden of proof to the defendant. The trial court also found as fact that the relief sought in the proposed amendment could be attained by proving the other allegations contained in the complaint. Given this information and the late date at which the amendment was sought, the trial court denied plaintiff's motion on the basis that it would be unfairly prejudicial to the defendant.

Amendments to pleading are governed by N.C.G.S. § 1A-1, Rule 15(a) (1990) which provides:

A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 30 days after it is served. *Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.*

(Emphasis added). It is clear that plaintiff did not file his amended complaint before the defendant answered. Therefore the only way in which the plaintiff could have amended his complaint was with the written permission of the defendant which was not granted, or by leave of court.

"A motion to amend is addressed to the sound discretion of the trial judge and the denial of such motion is not reviewable absent a clear showing of abuse of discretion." *House of Raeford Farms, Inc. v. City of Raeford,* 104 N.C. App. 280, 282, 408 S.E.2d 885, 887 (1991) (citation omitted). Although the trial court is not required to state reasons for its denial of a motion to amend, orally or in writing, the trial court here chose to do so. Therefore, we will be guided by the factors the trial court considered in denying plaintiff's motion.

FREESE v. SMITH

[110 N.C. App. 28 (1993)]

In its order, the trial court specifically noted that undue prejudice would result to the defendant if the amendment was allowed. Given the vast amount of discovery that had taken place and the potential that the burden of proof would have shifted to the defendant, we agree that undue prejudice would have resulted. Plaintiff argues that his amendment did not change the facts of the case, but instead merely applied the proper legal theory to the facts. According to plaintiff since the facts are the same no prejudice would result to defendant even though the period for discovery had passed. We do not agree because the addition of a new legal theory may well have changed defendant's approach to discovery. Plaintiff's first assignment of error is overruled.

## II.

For his second assignment of error, plaintiff argues that it was error for the trial court to grant defendant's motion for a directed verdict at the conclusion of plaintiff's evidence. As to this assignment of error, we do agree. Unlike the trial judge who denied plaintiff's motion to amend, the trial judge who granted defendant's directed verdict did not provide us with specific findings of fact as to why the defendant's motion for a directed verdict was granted. Instead, the trial court simply said in open court: "The motion made by the Defendant for a directed verdict is granted." When asked by plaintiff's counsel if the ruling applied to all counts of the complaint, the trial court responded in the affirmative. In his brief, plaintiff has only argued the propriety of the trial court's ruling as to three of his claims: common law fraud, breach of contract and breach of fiduciary duty. Therefore, we will only consider the appropriateness of the trial court's order as to these three theories and plaintiff's remaining theories for recovery are deemed abandoned.

The purpose of a motion for a directed verdict is to test the legal sufficiency of the evidence to take the case to the jury. *DeHart v. R/S Fin. Corp.*, 78 N.C. App. 93, 337 S.E.2d 94 (1985), *disc. rev. denied*, 316 N.C. 376, 342 S.E.2d 893 (1986). The trial court, in deciding on a motion for a directed verdict, must determine whether the evidence in the light most favorable to the nonmovant is sufficient to take the case to the jury. *Southern Bell Tel. & Tel. Co. v. West*, 100 N.C. App. 668, 397 S.E.2d 765 (1990), *aff'd*, 328 N.C. 566, 402 S.E.2d 409 (1991). In making this determination a directed verdict should be denied if there is more than a scintilla

of evidence supporting each element of the nonmovant's case. *Snead v. Holloman*, 101 N.C. App. 462, 400 S.E.2d 91 (1991). To decide whether there is more than a scintilla of evidence on a defendant's motion for directed verdict, all of the plaintiff's evidence must be taken as true, and the evidence must be considered in the light most favorable to the plaintiff, giving him the benefit of every reasonable inference to be drawn from the evidence. *Atlantic Tobacco Co. v. Honeycutt*, 101 N.C. App. 160, 398 S.E.2d 641 (1990), *disc. rev. denied*, 328 N.C. 569, 403 S.E.2d 506 (1991).

On appeal, in reviewing the trial court's decision to grant a directed verdict, this Court's scope of review is limited to those grounds asserted by the moving party at the trial level. *Southern Bell Tel. & Tel. Co. v. West*, 100 N.C. App. 668, 397 S.E.2d 765 (1990), *aff'd*, 328 N.C. 566, 402 S.E.2d 409 (1991); *Warren v. Canal Indus., Inc.*, 61 N.C. App. 211, 300 S.E.2d 557 (1983). The only indication which we have of the grounds asserted by defendant in favor of his directed verdict comes from the portion of the transcript where defendant made his motion. When the defendant moved for directed verdict, he stated that the evidence failed to show any basis upon which the jury could find that the defendant was in any way responsible for plaintiff's loss. Defendant's argument addresses the sufficiency of plaintiff's evidence, particularly the element of causation so we will examine the sufficiency of plaintiff's evidence in light of the causes of action which plaintiff has raised on appeal.

A.

Common Law Fraud

[2] Our Supreme Court has said that in order for a cause of action for fraud to exist, a plaintiff must show:

> (a) that the defendant made a representation relating to some material past or existing fact; (b) that the representation was false; (c) that when he made it defendant knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (d) that the defendant made the false representation with the intention that it should be acted on by the plaintiff; (e) that the plaintiff reasonably relied upon the representation and acted upon it; and (f) that the plaintiff suffered injury.

*Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 568, 374 S.E.2d 385, 391 (1988), *reh'g denied*, 324 N.C. 117, 377 S.E.2d 235 (1989) (citation omitted). In North Carolina, scienter embraces both knowledge of falsity and an intent to deceive. *Id.* Not only are affirmative misrepresentations actionable but also material omissions when there is a duty to disclose. *See Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E.2d 494 (1974). In addition, even if there is no duty to disclose information, if a seller does speak then he must make a full and fair disclosure of the matters he discloses. *Id.*

Plaintiff has cited in his brief to five pieces of information that were not disclosed to him:

1. Norelli's recommendation against selling the irrigation portion of the business to defendant's son and that EJS needed an infusion of $1,500,000 to remain solvent.

2. A settlement with Shindaiwa which included a Confession of Judgment in the amount of $500,000, return of inventory, immediate cash payment of $50,000 and monthly payments of $10,000.

3. An indemnity agreement between EJS and defendant indemnifying defendant for any loss on his personal guaranty of a loan to NCNB.

4. That the continuation of the NCNB loan was contingent upon the injection of $500,000 capital into EJS from outside investors.

5. That the final version of the accountant's report dated 29 December 1987 was withheld.

In addition, plaintiff claims that several facts were affirmatively misrepresented by defendant. Plaintiff claims that defendant told him that the sale of the portion of the business to his son was an unprofitable part of the company. When plaintiff did finally see the accountant's report, it indicated that the portion of the business transferred to defendant's son had lost less money than originally was represented.

In contrast, defendant claims that since plaintiff conducted his own investigation, he was aware that EJS was heavily in debt and would require good management and good luck to succeed.

Therefore, it was the absence of good luck that led to the downfall of EJS and not plaintiff's lack of information. We cannot agree.

Many of the facts which plaintiff claims were omitted or misrepresented were things that he would not have discovered during his own investigation. It is clear that defendant, as the majority shareholder in EJS, was in a far superior position to have access to information concerning the financial status of EJS. Plaintiff's right to rely on defendant for an accurate picture of EJS's financial status was not destroyed by his own investigation. *Fox v. Southern Appliances, Inc.*, 264 N.C. 267, 141 S.E.2d 522 (1965). Even though plaintiff did investigate, he still did not know the status of several critical transactions such as the settlement with Shindaiwa and the filing of the collateral reports to NCNB, because they were handled exclusively by defendant.

Therefore, taking the evidence in the light most favorable to plaintiff and giving him the benefit of every reasonable inference, we hold that it was improper for the trial court to have granted a directed verdict in favor of defendant on the common law fraud claim. There is no doubt that plaintiff suffered damages as a result of his investment. However as to the other elements of fraud, such as falsity, scienter and reasonable reliance, the evidence is in dispute. We note that the elements in dispute often are not capable of direct proof and are best decided by a jury. *See Olivetti Corp. v. Ames Business Sys. Inc.*, 319 N.C. 534, 356 S.E.2d 578, *reh'g denied*, 320 N.C. 639, 360 S.E.2d 92 (1987) (question of reasonable reliance is ordinarily for finder of fact); *Woodward v. Pressley*, 39 N.C. App. 61, 249 S.E.2d 471 (1978) (evidence sufficient to raise jury question on issue of falsity); *Douglas v. Doud*, 95 N.C. App. 505, 383 S.E.2d 423 (1989) (sufficient evidence presented for jury to conclude defendant had knowledge of falsity). We find that sufficient evidence existed to go to the jury as to the elements of common law fraud. The directed verdict on the issue of common law fraud was error.

B.

Breach of Contract

[3] The second cause of action addressed in plaintiff's brief is breach of contract. As defendant pointed out, however, there was never a signed contract between plaintiff and defendant. Such being the case, plaintiff's claim would seem to be barred by N.C.G.S.

§ 25-8-319 (Cum. Supp. 1992) which provides: "A contract for the sale of securities is not enforceable by way of action or defense unless (a) [t]here is some writing signed by the party against whom enforcement is sought . . . ." However, § 25-8-319 is Article 8's version of the statute of frauds, and since the statute of frauds is an affirmative defense it may not be raised for the first time on appeal. *Sanders v. Walker*, 39 N.C. App. 355, 250 S.E.2d 84 (1979). Therefore, since defendant neither pled nor otherwise raised the statute of frauds during the trial below, he is precluded from doing so now on appeal.

We have found no basis, other than the statute of frauds, upon which the trial court could have granted defendant's motion for a directed verdict. Therefore the question of whether or not a contract was intended or whether or not there was a breach of any contract is best left for the jury. We hold that it was error for the trial court to grant a directed verdict on plaintiff's claim for breach of contract.

## C.

### Breach of Fiduciary Duty

[4] The third cause of action which plaintiff has raised on appeal is breach of fiduciary duty. Plaintiff claims that after 26 February 1988, the date of his investment in EJS, he was owed a duty of good faith as a minority shareholder. We agree.

As a general rule, shareholders do not owe a fiduciary duty to each other or to the corporation. Robinson, *North Carolina Corporation Law*, § 11.4 (1990). However this rule is not without exception. In North Carolina, it is well established that a controlling shareholder owes a fiduciary duty to minority shareholders. *See Gaines v. Long Mfg. Co.*, 234 N.C. 340, 67 S.E.2d 350 (1951). Once a minority shareholder challenges the actions of the majority, the burden shifts to the majority to establish the fairness and good faith of its actions. *Loy v. Lorm Corp.*, 52 N.C. App. 428, 278 S.E.2d 897 (1981). The trial court's decision to grant a directed verdict at the conclusion of the plaintiff's evidence precluded plaintiff from shifting the burden to the defendant to prove that his actions were fair. In essence the trial court decided as a matter of law that no fiduciary duty was owed to the plaintiff. We cannot agree.

When plaintiff invested his $250,000 in EJS he acquired 45% of the stock. The remaining and majority shares were controlled by defendant. Therefore, plaintiff was a minority shareholder and as such he was owed a fiduciary duty by the defendant. Plaintiff alleged in his brief that defendant breached this fiduciary duty by repaying himself loans he made to EJS, repaying debts to Delmar Corporation, a corporation owned predominately by defendant, and preferentially repaying a corporate debt which he had personally guaranteed. We have reviewed the record and have found that several of these preferential payments occurred after plaintiff's investment in EJS, when defendant's fiduciary duty was owed.

In reaching our decision that plaintiff has established a prima facie case for breach of fiduciary duty, we are guided by *Loy v. Lorm Corp.*, 52 N.C. App. 428, 278 S.E.2d 897 (1981). There, a minority shareholder (25%) sued the other three shareholders for transferring assets of the corporation to another corporation owned by the three majority shareholders for no consideration. On those facts, this Court held that the majority had undertaken a fundamental change in the corporate structure without complying with statutory mandates and that such constituted a breach of a director's fiduciary duty as well as a breach of the majority shareholders' duty to the minority shareholder.

In the present matter, defendant served as both a director and as Chairman of the Board of Directors. As such, defendant was under a statutory mandate to act in good faith and not to engage in any self dealing. *See* N.C.G.S. § 55-8-30 (1990). Plaintiff has alleged and proved sufficient facts which taken in the light most favorable to plaintiff constitute a breach of defendant's duty of loyalty to the corporation, a violation of statutory mandates. We hold that this evidence is sufficient to establish a breach of defendant's fiduciary duty to plaintiff as a minority shareholder. We therefore hold that it was error for the trial court to grant defendant's motion for a directed verdict on the claim of breach of fiduciary duty.

III.

[5] In his third assignment of error, plaintiff claims that it was error for the trial court to grant defendant's motion for costs and attorney's fees pursuant to N.C.G.S. § 6-21.5. This section provides:

In any civil action or special proceeding the court, upon motion of the prevailing party, may award a reasonable attorney's fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading.

N.C.G.S. § 6-21.5 (1986). After granting defendant's motion for a directed verdict, the trial court awarded defendant $88,560.00 in attorney's fees and costs on the basis that plaintiff's claim was void of any justiciable issue. Since we have ruled that the trial court erred in granting defendant's motion for a directed verdict on the issues of fraud, breach of contract and breach of fiduciary duty, we necessarily find that justiciable issues did exist. Therefore, we need not address this issue and we hereby vacate the trial court's award of attorney's fees and costs.

In conclusion, the disposition of this appeal shall be as follows: (1) the denial of plaintiff's motion to amend is affirmed, (2) the directed verdict in favor of defendant is reversed and remanded for a new trial on the issues of fraud, breach of contract and breach of fiduciary duty, and (3) the award of costs and attorney fees pursuant to N.C.G.S. § 6-21.5 is vacated.

Affirmed in part; reversed in part; and vacated in part.

Judges WELLS and EAGLES concur.