MEDTRONIC, INC., Appellant/Cross–Appellee,

v.

CONVACARE, INC.; SCOOP, (Special Care of Our Patients) Inc.; Robert G. Johnson, Appellees/Cross–Appellants.

Nos. 93–1476, 93–1517.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 8, 1993.

Decided Feb. 22, 1994.

Counsel who presented argument on behalf of the appellant was Douglas L. Skor, St. Paul, MN. Additional attorney appearing on the brief was Kathleen Erickson DiGiorno.

Counsel who presented argument on behalf of the appellee was James P. Larkin, Bloomington, MN. Additional attorney appearing on the brief was Thomas J. Seymour.

Before BEAM, Circuit Judge, LAY, Senior Circuit Judge and BOGUE,* Senior District Judge.

BEAM, Circuit Judge.

This diversity case requires us to interpret the terms of a multidocument contract between Medtronic, Inc., a manufacturer of medical products, ConvaCare, Inc., one of Medtronic's distributors, and Robert Johnson, ConvaCare's president and majority stockholder. A jury determined that the parties on both sides of this dispute breached the agreement. Medtronic appeals the manner in which the district court[1] structured its judgment to limit Johnson's personal liability. ConvaCare and Johnson cross-appeal the dismissal of their counterclaims for breach of fiduciary duty and breach of the covenant of good faith and fair dealing. We affirm.

## I. BACKGROUND

Medtronic is a Minnesota corporation that manufactures and distributes, among other things, pain relief products known as transcutaneous electrical nerve stimulation devices ("TENS"). In 1978, Medtronic began distributing TENS units in North Carolina through ConvaCare, a North Carolina medical supplies distributor owned and operated by Johnson. Over time, ConvaCare's sales area grew to include Virginia, Tennessee, and Maryland. As ConvaCare's sales grew, Medtronic extended a line of credit to ConvaCare, evidenced by periodic security and sales agreements. By 1986, however, ConvaCare's debt had grown to an uncomfortable

---

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

level and Medtronic refused to extend further credit.

After a year of negotiations, Medtronic agreed to reduce ConvaCare's debt by $250,000 and to grant ConvaCare exclusive distribution rights for its TENS units within a specified territory. In return, Johnson gave Medtronic 33% of ConvaCare's voting stock, the right to appoint two of ConvaCare's five directors, a security interest in ConvaCare's remaining stock, and his personal guaranty of $40,000 of ConvaCare's debt. In addition, Convacare executed a promissory note and agreed to purchase stated minimum amounts of Medtronic products each quarter. The parties memorialized this agreement in four documents which became effective on October 30, 1987: (1) agreement for repayment of indebtedness (repayment agreement); (2) promissory note; (3) security agreement; and (4) Johnson's personal guaranty.

Medtronic brought this action alleging that ConvaCare and Johnson breached the agreement by failing to make the required purchases and by defaulting on the promissory note.[2] Medtronic sought to recover the balance due on the note and to terminate its relationship with ConvaCare and Johnson. ConvaCare and Johnson counterclaimed for breach of contract, fraud, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing. The district court granted Medtronic's motion for summary judgment on the breach of the covenant of good faith and fair dealing claim and, after hearing all of the evidence, granted Medtronic's motion for judgment as a matter of law on the breach of fiduciary duty claim. The rest of the claims were decided by a jury.

Before trial, the parties agreed that the district court would determine Medtronic's damages if the jury found ConvaCare and Johnson liable. The jury found that both parties breached the contract and awarded ConvaCare and Johnson $40,000 in damages on their counterclaim. The court then calculated Medtronic's damages and entered judgment against ConvaCare for $905,143.80[3] and made Johnson jointly and severally liable for $40,000 of this amount. Medtronic appeals arguing that although Johnson's personal guaranty was limited to $40,000, he is jointly and severally liable for the entire judgment under the terms of the repayment agreement. ConvaCare and Johnson cross-appeal the dismissal of their claims for breach of fiduciary duty and breach of the covenant of good faith and fair dealing.

## II. DISCUSSION

### A. Joint and Several Liability

■ The repayment agreement, which Johnson signed in his capacity as president of ConvaCare and also in his individual capacity, provides in relevant part:

> 6.1) *Indemnification by ConvaCare and Johnson.* ConvaCare and Johnson, jointly and severally, agree to indemnify and hold Medtronic harmless from any and all losses or damages (including reasonable attorneys' fees) suffered by Medtronic which arise out of, relate to, pertain to or concern any breach by ConvaCare or Johnson of their agreements herein, including the nondisclosure provisions of Section 4 and the representations and warranties of Section 5.

Appellant's App. at 21. Medtronic argues that this section of the repayment agreement obligates Johnson, jointly and severally with ConvaCare, to pay the entire judgment on ConvaCare's promissory note.[4] Johnson ar-

---

2. Special Care of Our Patients, Inc. (SCOOP) appears to have no relation to this case except that Johnson is its president and sole shareholder. The parties agreed for purposes of this litigation, however, that any finding of liability against ConvaCare would be equally enforceable against SCOOP. Accordingly, our references to ConvaCare as a party to this action implicitly include SCOOP.

3. Before entry of judgment, the court apparently deducted ConvaCare and Johnson's $40,000 jury award from Medtronic's actual damages.

4. We reject ConvaCare and Johnson's argument that this claim was not preserved for appeal. The issue was raised in Medtronic's Second Amended Complaint and in letter-briefs to the district court before entry of judgment. We note that the district court admonished both sides to reexamine their overly contentious and unrealistic positions. Appellant's App. at 52–53. It appears that neither side took the court's advice. *See infra* note 6.

gues that his liability on the note is limited by section 2.2(b) of the same agreement.

■ The repayment agreement provides that it is to be interpreted under the law of Minnesota. Appellant's App. at 24. We review the district court's determination of Minnesota law de novo. *See Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). Under Minnesota law, we construe the parties' agreement as a whole and attempt to harmonize all clauses of the contract in order to give effect to the parties' intention. *Metropolitan Sports Facilities Comm'n v. General Mills, Inc.*, 470 N.W.2d 118, 122–23 (Minn.1991); *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525 (Minn.1990). The specific terms of a contract govern over the general in the event of conflict. *Burgi v. Eckes*, 354 N.W.2d 514, 519 (Minn.Ct.App. 1984).

Medtronic argued at trial that ConvaCare and Johnson were liable for ConvaCare's default on the promissory note or, in the alternative, that Convacare and Johnson were liable under a theory of unjust enrichment. Appellant's App. at 71. The jury found ConvaCare and Johnson liable for default on the note only. *Id.* at 72. Section 2.2(b) of the repayment agreement clearly limits Johnson's liability for default on the promissory note to $40,000 pursuant to the terms of his personal guaranty.[5] Although section 6.1 may have extended Johnson's liability on other obligations under the agreement, we hold that the specific and unambiguous terms of section 2.2 govern his liability for default on the promissory note. If we were to hold otherwise, the terms of the contract would be irreconcilable. Accordingly, the district court properly limited the judgment against Johnson to the amount that he personally guaranteed.

**B. Fiduciary Duty**

■ ConvaCare and Johnson argue on cross-appeal that the district court erred by entering judgment as a matter of law against their breach of fiduciary duty claim. They contend that Medtronic breached the fiduciary duty it owed ConvaCare as a one-third shareholder of a closely held corporation with the power to appoint two of five directors to the board.[6] The district court found that ConvaCare and Johnson presented insufficient evidence from which a jury could find a breach of a fiduciary duty. Appellees' Joint App. at 45. We review this ruling de novo, "affirming if the 'evidence is such that, without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict.'" *Johnson v. Cowell Steel Structures, Inc.*, 991 F.2d 474, 478 (8th Cir. 1993) (quotation omitted). Like the district court, we must view the evidence in favor of the party that opposed entry of judgment and give that party the benefit of all reasonable inferences from the evidence. *Id.*

ConvaCare and Johnson's argument is based on the competition between Medtronic and ConvaCare. Approximately one year before Medtronic entered negotiations to restructure ConvaCare's debt, Medtronic began to distribute TENS units directly. ConvaCare and Johnson presented evidence at trial that Medtronic increased staffing at a direct distribution center that competed for business with ConvaCare after it had acquired ConvaCare stock and appointed members to the board, and that Medtronic knew the increased competition was harmful to ConvaCare. Appellees' Joint App. at 17–19 and 26. ConvaCare and Johnson also argue

---

5. 2.2) *Security For Payment of Promissory Note.* As security for the prompt payment of the amounts due under the Promissory Note:
   . . . .
   (b) *Personal Guaranty.* Johnson hereby personally guaranties to Medtronic the full and prompt payment of the Promissory Note delivered by ConvaCare, subject to the terms and conditions of the form Guaranty attached hereto as Exhibit D ("Guaranty"). Johnson's liability under the Guaranty shall be limited to Forty Thousand Dollars ($40,000).

Appellant's App. at 17.

6. Medtronic argues that we should dismiss both claims on ConvaCare's cross-appeal because ConvaCare did not notify Medtronic which transcript pages it would include in its appendix within the time limit prescribed by Federal Rule of Appellate Procedure 10(b)(3). Medtronic has not convinced us that it was prejudiced in any way by ConvaCare's admitted oversight. Accordingly, we will forgo this severe sanction.

that both directors Medtronic appointed to ConvaCare's board were involved in a plot to take business away from ConvaCare. Appellees' Opening Brief at 23.

■ The parties dispute whether Minnesota or North Carolina law applies to the breach of fiduciary duty claim.[7] We need not address this choice of law issue because we would come to the same resolution of the merits under either state's law. Assuming that Medtronic owed a fiduciary duty to ConvaCare, ConvaCare and Johnson presented insufficient evidence to prove a breach of that duty.[8] Although the terms of the parties' agreement created an obvious conflict of interest, the record on appeal reveals no evidence that Medtronic's competition with ConvaCare was anything other than open, honest, and fair. *See Freese v. Smith,* 428 S.E.2d 841, 847 (N.C.Ct.App.1993) (fiduciary duty to act fairly and in good faith); *Pedro v. Pedro,* 489 N.W.2d 798, 801 (Minn.Ct.App. 1992) (fiduciary duty is to deal openly, honestly, and fairly with other shareholders). Specifically, the record does not show that Medtronic used its position as a ConvaCare shareholder or its power to appoint two directors in order to gain inside information, to gain an unfair competitive advantage, or otherwise to harm ConvaCare. Furthermore, we find no evidence to support the assertion that the two ConvaCare directors appointed by Medtronic were involved in a plot to destroy ConvaCare. Thus, the district court appropriately dismissed the breach of fiduciary duty claim.

### C. Covenant of Good Faith and Fair Dealing

■ Finally, ConvaCare and Johnson argue that the district court erred by granting summary judgment against their claim that Medtronic breached its covenant of good faith and fair dealing under the contract. The district court found that Minnesota law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing separate from the underlying breach of contract claim. Appellant's App. at 50–51. We agree. *Orthomet, Inc. v. A.B. Medical, Inc.,* 990 F.2d 387, 392 (8th Cir.1993); *Wild v. Rarig,* 234 N.W.2d 775, 790 (Minn.1975), *cert. denied,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976).

### III. CONCLUSION

For the reasons discussed above, we affirm the judgment of the district court.

7. Although the parties agree that Minnesota law governs the contract that transferred ConvaCare stock to Medtronic, Minnesota law provides that the rights of shareholders are governed by the law of the state of incorporation. *Erickson–Hellekson–Vye Co. v. A. Wells Co.,* 15 N.W.2d 162, 168 (Minn.1944). ConvaCare is a North Carolina corporation.

8. In Minnesota, shareholders of closely held corporations owe one another a fiduciary duty. *Pedro v. Pedro,* 489 N.W.2d 798, 801 (Minn.Ct.App. 1992). This is arguably untrue in North Carolina. *Compare Freese v. Smith,* 110 N.C.App. 28, 428 S.E.2d 841, 847 (1993) (controlling shareholder fiduciary duty is one of few exceptions to general rule that shareholders do not owe fiduciary duty to each other or the corporation) *with Loy v. Lorm Corp.,* 52 N.C.App. 428, 278 S.E.2d 897 (1981) (three minority shareholders breached individual fiduciary duties to the fourth shareholder of a close corporation). It is unnecessary for us to determine the state of the law in North Carolina.