VANDERVOORT v. McKENZIE

[117 N.C. App. 152 (1994)]

━━━━━━━━━

DALE G. VANDERVOORT, PLAINTIFF v. CAMERON McKENZIE, DEFENDANT

No. 9329SC1154

(Filed 6 December 1994)

**1. Adverse Possession § 2 (NCI4th)— use of roadway adverse, hostile, and under claim of right—sufficiency of evidence**

Evidence was sufficient to create a jury question of whether plaintiff's use of a roadway was adverse, hostile, or under claim of right where it tended to show that plaintiff went onto the property at least once each year to clear out the roadway and that, as far as he knew, he was the only person who did so on a regular basis.

**Am Jur 2d, Adverse Possession §§ 48 et seq.**

VANDERVOORT v. McKENZIE

[117 N.C. App. 152 (1994)]

2. **Adverse Possession § 2 (NCI4th)— use of roadway not permissive—sufficiency of evidence**

Evidence was sufficient to create a jury question as to whether plaintiff overcame the presumption that his use of the roadway was permissive where plaintiff testified that he had the right to use the roadway and that other people thought of him as being in control of the roadway.

**Am Jur 2d, Adverse Possession §§ 48 et seq.**

3. **Adverse Possession § 3 (NCI4th)— use of roadway continuous and uninterrupted—sufficiency of evidence**

Evidence was sufficient for a jury to find that plaintiff had satisfied his burden of showing that his use of a roadway was continuous and uninterrupted for the statutorily required twenty-year period where it tended to show that plaintiff bought his property and used the roadway from 1961 until the mid-1980's when defendant's construction activities completely destroyed the old roadway; plaintiff used the roadway quite often for recreational purposes when he lived nearby, and he used the roadway several times per year even after he moved away; other people used the roadway with plaintiff's permission; and plaintiff was the person who maintained the roadway for his use and other people's enjoyment.

**Am Jur 2d, Adverse Possession §§ 80-83.**

4. **Appeal and Error § 147 (NCI4th)— failure to object to line of questioning—waiver of right to object on appeal**

In an action to establish a prescriptive easement in a roadway across defendant's land, defendant waived his right to object on appeal to a line of questioning concerning a dispute between himself and two others regarding a separate road, since there was no indication from the record that defendant made a line objection at trial to plaintiff's line of questioning.

**Am Jur 2d, Appeal and Error §§ 545 et seq.**

5. **Evidence and Witnesses § 1987 (NCI4th)— illness of witness not shown—failure to show witness 100 miles away—deposition properly excluded**

The trial court did not err by excluding the deposition of a subpoenaed witness where defendant's attorney was unable to adequately satisfy the court that the witness was ill, and defend-

ant's attorney could not produce a map to show the court that the witness was more than 100 miles from the place of trial. N.C.G.S. § 1A-1, Rule 32(a)(4).

**Am Jur 2d, Witnesses §§ 5, 28, 28.5.**

Appeal by defendant from judgment entered 26 April 1993 by Judge Zoro J. Guice, Jr. in McDowell County Superior Court. Heard in the Court of Appeals 30 August 1994.

Defendant-appellant (hereinafter appellant) appeals from a jury verdict declaring that plaintiff-appellee (hereinafter appellee) acquired a prescriptive easement over the land of appellant and awarding appellee $100,000 in damages. Appellee bought land in McDowell County from Charles Owens and his wife in June 1961. For many years appellee reached his land by using a roadway that extended from Bat Cave Road through the lands of several people to appellee's land. In March 1981, appellant bought from the White family approximately 980 acres of land which was adjacent to appellee's property. The land that appellant purchased had previously belonged to Kimball Miller. Appellant alleged that he had a title search of this land performed before he purchased the property and that the only easement revealed was a Duke Power easement. After appellant bought the property, he subdivided part of it as "Gateway Mountain" and sold off lots to various people. A homeowners' association, the Gateway Mountain Property Owners Association, (hereinafter Association) was formed in September 1986.

During the development of the Gateway property, the old logging roads and trails, including the old roadway that appellee had used to reach his property, were destroyed as new roads were constructed. For awhile, appellee used portions of appellant's new roads to reach his property, but in September 1984, appellant informed appellee that he would no longer be permitted to use appellant's new roads.

Appellee filed suit against appellant and the Association in June 1987, alleging that appellee had acquired a prescriptive easement over appellant's land. Appellee and the Association moved for summary judgment in March 1988 which was denied on 25 April 1988. In July 1988 appellant and the Association moved to dismiss and for sanctions for appellee's failure to comply with the Rules of Civil Procedure and for failure to join necessary parties. In September, appellee was allowed to amend his complaint to conform with the Rules of Civil Procedure and to join additional parties necessary for a final and

**VANDERVOORT v. McKENZIE**

[117 N.C. App. 152 (1994)]

full determination of the matters in controversy. Appellee subsequently amended his complaint to add as defendants Carmen Anna McKenzie (appellant's wife), Betty Gilliam, Emory Vess, Cheryl Kirkland, Doris Harrison, and Johnson, Price and Sprinkle, P.A. These additional defendants owned land through which the old roadway traveled. Appellant, joined by all of the other defendants, answered the amended complaint.

On 19 May 1989, appellee filed a notice of lis pendens claiming a right of way extending from Bat Cave Road through portions of all of the defendants' property and ending at appellee's property. On 12 June 1990, appellant again moved for summary judgment, joined by all of the new defendants. Judge James J. Booker granted defendants' motion for summary judgment on 2 October 1990. Appellee appealed the granting of summary judgment on 8 October 1990. This Court reversed Judge Booker's entry of summary judgment as to appellant because Judge Bruce Briggs had previously denied appellant's first motion for summary judgment in April 1988. This Court affirmed Judge Booker's entry of summary judgment as to defendants Estate of Emory Vess, Doris Harrison, Johnson, Price & Sprinkle, P.A., Cheryl Kirkland, and appellant's wife. The forecast of evidence indicated that appellee's use of the roadway had been permissive. This Court did not rule with respect to defendant Association or defendant Betty Gilliam because the Clerk of Superior Court of McDowell County had entered default judgment against them in March 1989.

Appellee's claim went to trial and on 22 April 1993 the jury returned a verdict for appellee. Despite appellant's post-verdict motions for judgment notwithstanding the verdict, a new trial, and remittitur, the trial court entered judgment on 26 April 1993. On 12 May 1993, appellant filed notice of appeal.

*Dungan & Mraz, by James M. Lloyd, Michael E. Smith, and Robert E. Dungan, for defendant-appellant Cameron McKenzie.*

*Carnes and Franklin, by Hugh J. Franklin, for plaintiff-appellee Dale G. Vandervoort.*

EAGLES, Judge.

Appellant brings forward several assignments of error. After careful review, we affirm.

We begin by stating the elements necessary for a party to establish its right to a prescriptive easement. In establishing a prescriptive

VANDERVOORT v. McKENZIE

[117 N.C. App. 152 (1994)]

easement, the party must overcome the presumption that the party is on the owner's land with the owner's permission. *Johnson v. Stanley*, 96 N.C. App. 72, 73, 384 S.E.2d 577, 579 (1989), *citing Dickinson v. Pake*, 284 N.C. 576, 580-81, 201 S.E.2d 897, 900 (1974). Accordingly, the party must prove by a preponderance of the evidence:

> (1) that the use is adverse, hostile or under claim of right; (2) that the use has been open and notorious such that the true owner had notice of the claim; (3) that the use has been continuous and uninterrupted for a period of at least twenty years; and (4) that there is substantial identity of the easement claimed throughout the twenty-year period.

*Potts v. Burnette*, 301 N.C. 663, 666, 273 S.E.2d 285, 287-88 (1981).

I.

Appellant contends that the trial court erred by denying appellant's motions for directed verdict and for judgment notwithstanding the verdict. In deciding whether to grant a motion for directed verdict and a motion for judgment notwithstanding the verdict the trial court must determine whether the evidence, viewed in the light most favorable to the non-moving party, is sufficient to take the case to a jury. *Freese v. Smith*, 110 N.C. App. 28, 33, 428 S.E.2d 841, 845 (1993). "In making this determination[,] a directed verdict should be denied if there is more than a scintilla of evidence supporting each element of the nonmovant's case." *Id.* at 33-34, 428 S.E.2d at 845, *citing Snead v. Holloman*, 101 N.C. App. 462, 400 S.E.2d 91 (1991). On appeal, "[our] scope of review is limited to those grounds asserted by the moving party at the trial level." *Freese v. Smith*, 110 N.C. App. at 34, 428 S.E.2d at 845-46 (citations omitted).

[1] Appellant first contends that the trial court erred in denying appellant's motion for directed verdict because appellee presented no evidence that appellee's use of the roadway was adverse, hostile, or under claim of right. We consider the following portions of appellee's testimony at trial pertinent to our decision:

> Q. During the time that you owned [the land] until the road construction work was done by Mr. McKenzie, did you keep it maintained so that you could drive a car up there?

> A. Yes, at least once a year and sometimes more. Anytime I knew we had to go up or wanted to go up, we had somebody go check the road and take a tractor and blade and smooth it out, if there

was any erosion, and we kept putting water breaks on it as the years went by, so that you could drive up over it. So we maintained the road regularly.

. . .

Q.  To your knowledge, did the White family use that same road for getting into the property?

A.  They had no other way of getting into the property. I didn't know if they used it or what but if they used it, they had to use that road.

Q.  Now, describe to the Jury the use that you made of the property from the time you bought it over the years until your access was destroyed by Mr. McKenzie?

A.  Well the first thing we did after building the trout pond, about a year later, we decided that we would plant some Christmas trees. So we cleared out part of the are [sic] of the old apple orchard and put about 1,000 Christmas trees in. That didn't work too well because of the locust they brought up there and they grew faster than the Christmas trees. We tried to keep up with it for awhile but we couldn't. Some of the Christmas trees are still up there. There was also an apple orchard there and we cleaned out part of the apple orchard to put the Christmas trees in. There was peach trees. For years, we picked peaches on every year. We would go up on Labor Day and have a picnic and that sort of thing. My family and I and some of our friends would go up there nearly every weekend. We built a shed and fireplace. We would camp. We would take our tents and go up and camp out and the shed was to keep us out of the rain. We did some fishing. We had an awful lot of frogs in that pond. We use [sic] to shoot frogs and had frog legs. My children really enjoyed the place and they called it "Daddy's Mountain." We had a lot of friends that use [sic] to use it and would join us up there. Woody, a friend of mine, would go and camp on weekends with us. So we used it quite frequently.

. . .

Q.  Did you give any of your friends any general permission to go up there anytime?

A.  Yes sir, anybody that I knew that knew I had the place, they were welcome to go. . . .

**VANDERVOORT v. McKENZIE**

[117 N.C. App. 152 (1994)]

Q. Did you ever at anytime ask anyone for permission to use that road to get to your property?

A. No sir, that road was there. It was the only way to get to that property and that property when I bought the property, I assumed that road was there, that's why I maintained it and kept it going, I knew that Kim Miller had used it and knowing he used it and I also knew the Vess' [sic] had a right to that road. They had no other way to get there.

. . .

Q. While you were living away from here, how frequently did you go to the property?

A. Well, that depends an awful lot where I was living at the time. When I was in Montreal, I only got up there maybe three times, maybe four times a year. When I was living in New York, I got up there quite a lot more but I would be coming to Old Fort on business frequently and we would go up there nearly everytime I come down here. I'd say 10, 15 times a year when I was living in New York, and then when I was in Williamstown, I always came down in the fall to go up dove shooting. We had dove shoots for 35 years down here and I always came back and we always went upon the mountain and picked peaches. I would say in Williamstown and Coopersburg, I would probably come down about three times a year. Once I got to Coopersburg, I found out Cameron had bought the property and cutting timber on it so I came down to see what was happening. I came down more then and at that time, they had destroyed part of my road. I was trying to negotiate trying to get my road back.

Q. During the time that you lived away from here, did you continue to have contact with others who used your property with your permission?

A. Yes, I was constantly frequently called and talked to either Gudger Welch or Sonny Ashe, who was, I believe Sonny Ashe was here after Gudger moved to Greenville so I would call him and ask him how the road was and if anybody was going up it and he would report it and I would have to get back up here and fix it. They kept the road going all the time and whoever wanted to use it did use it. A lot of people used it.

. . .

Q.   Did anyone else make any repairs or do any maintenance on the road during the time that you owned it?

A.   Not to my knowledge, except I do believe that when they were cutting the timber off the Roy Vess property, they more than likely had to do some work on it to keep it up, some scraping work on it because it was pretty much of a clay road where the Vess property joined in and if they would run trucks out of there with timber on it, I feel like they would have done some work on it but they wouldn't have done any work past where they went in the road up to where it joins my property. That, we had to maintain.

. . .

Q.   (omitted from the record)

A.   I kept it maintained. It would wash out in spots and we would keep it repaired.

Q.   At sometime, did you put a gate on that property?

A.   Yes, I did. We got that road in such a good shape, we thought that people were going out and using it, people we hadn't given permission to and we thought it was wise to put a gate on it and we installed the gate on it just above the place where the Vess Road came into the old road. We couldn't put it below that because we would have stopped Vess from using it.

Q.   Which piece of property was this gate located on?

A.   It was on the White property.

Q.   Was Mr. White aware of this?

A.   Yes, we sent him a key. We had a lock on it and we sent him a key and the lock kept getting shot off and we would have to put a new lock on and everytime we did, we sent a key to him, to Mr. White.

Q.   Was there ever a time when you excluded Mr. White or his family from the property?

A.   No sir, I never excluded anybody. He had a key and all they had to do is go by the guard house at the Plant. We had a key if anybody wanted to use it.

Q.   Whose idea was it to put the gate on the property?

**VANDERVOORT v. McKENZIE**

[117 N.C. App. 152 (1994)]

A.   I suppose it may have been mine. I'll have to take responsibility for it. I don't know who suggested it to me but I put it on there or they put it on there.

Q.   Before you put the gate on it, did you speak with Mr. White?

A.   Yes, I did.

Q.   And what did you tell him at that time?

A.    I told him we had got the road in such good shape that I thought it would be wise to limit the access to it somewhat and that I wanted to put a gate down where the Vess Road came in and he said no problem. So we put the gate in. I told him he could have keys to it and he had keys to it. Everytime we changed that lock, somebody shot it off, we sent him the keys to it again.

Q.   He had no objection to that gate being placed there?

A.   He didn't say so, I, you know, really, we could have put the gate on there anyway but knowing we were putting it on his property, we thought it was best to tell him about it.

Q.   Do you recall, approximately when you first put that gate up?

A.   Well, I guess it was a couple of years after Kim sold it. So I don't know, probably about 4 or 5 years after I bought mine, '65 or '66.

Q.   Mr. Vandervoort, at anytime when you were dealing with Mr. White, did you ever tell him that you felt that you had the right to use that road?

A.   I didn't have to tell him. I had the right. I was using it.

The meanings of the terms "adverse," "hostile," and "under claim of right" are intertwined. " 'Adverse' means 'having opposing interests,' *Blacks Law Dictionary* 49 (5th ed. 1979) and '[t]he term adverse use . . . implies a use . . . that is not only under a claim of right, but that is open and of such character that the true owner may have notice of the claim.' " *Johnson v. Stanley*, 96 N.C. App. 72, 74, 384 S.E.2d 577, 579, *quoting Warmack v. Cooke*, 71 N.C. App. 548, 552, 322 S.E.2d 804, 807-08 (1984), *disc. rev. denied*, 313 N.C. 515, 329 S.E.2d 401 (1985) (citation omitted). "A 'hostile' use is simply a use of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under a claim of right." *Dickinson v. Pake*, 284 N.C. at 581, 201 S.E.2d at 900 (citation omit-

ted). "The term 'claim of right' is widely considered to be merely a restatement of the hostility requirement." *Johnson v. Stanley*, 96 N.C. App. 72, 75, 384 S.E.2d 577, 579 (1989) (citations omitted). A claim of right is an intention to claim and use land as one's own. *Black's Law Dictionary* 248 (6th ed. 1990). The true owner must have notice of the existence of the easement for the claim of right to validly exist. *Johnson*, 96 N.C. App. at 75, 384 S.E.2d at 579, *citing Taylor v. Brigman*, 52 N.C. App. 536, 541, 279 S.E.2d 82, 85-86 (1981). "[R]epairing or maintaining the way over another's land" is one way of giving notice. *Johnson*, 96 N.C. App. at 75, 384 S.E.2d at 579 (citations omitted).

From the record, it appears that, at trial, appellee presented sufficient evidence at trial that he maintained and repaired the roadway. Appellee testified that he went onto the property at least once each year to clear out the roadway and that as far as he knew, he was the only person who did so on a regular basis. We hold that the testimony set out *supra*, when viewed in the light most favorable to appellee, was sufficient to create a jury question of whether appellee's use of the roadway was adverse, hostile or under claim of right.

**[2]** Appellant also contends that the trial court erred in denying appellant's motion for directed verdict because this Court had previously ruled that appellee's use of the roadway was permissive. In *Vandervoort v. McKenzie*, 105 N.C. App. 297, 302, 412 S.E.2d 696, 699 (1992), we held that appellee did not "present[] sufficient evidence to overcome the presumption that his use was permissive." However, we also held that the trial court erred in granting summary judgment in favor of this appellant (McKenzie) because a previous trial court had denied his first motion for summary judgment. *Id.* Because appellee's case thereafter went to trial against appellant, we may not, in our evaluation of the trial court's denial of the directed verdict motion, simply look at the evidence that appellee presented when defending against the defendants' June 1990 summary judgment motion. We must consider the evidence presented at the 1993 trial in the light most favorable to appellee.

Because we have held that the evidence presented at trial was sufficient to permit the case to go to the jury on the issue of whether appellee's use of the roadway was adverse, hostile or under claim of right, we also hold that the trial court correctly denied the directed verdict on the issue of whether appellee overcame the presumption that his use of the roadway was permissive. Appellee testified that he

had the right to use the roadway and that other people thought of him as being in control of the roadway. Appellant contends that appellee's testimony of a conversation between appellee and members of the White family outweighs appellee's other testimony about being in control of the roadway. In our previous opinion dealing with the summary judgment issue, this Court focused on the conversation between appellee and the Whites and on additional evidence of a conversation between appellee and Miller, the previous owner of the property. There we held that the forecast of evidence indicated no genuine issue of material fact on the issue of permissive use. However, at the trial which gives rise to this appeal, the additional evidence of the conversation between appellee and Miller was not before the trial court. Accordingly, we hold that the evidence contained in this record, viewed in the light most favorable to appellee, was sufficient to create a jury question as to whether appellee overcame the presumption that his use of the roadway was permissive.

[3] Finally, appellant contends that the trial court erred in denying appellant's motions for directed verdict and judgment notwithstanding the verdict because appellee's use of the claimed right of way was not continuous and uninterrupted. We disagree. The "continuity" necessary for a party to establish a prescriptive easement depends on the nature of the easement asserted. *Concerned Citizens v. State Ex Rel. Rhodes*, 329 N.C. 37, 52, 404 S.E.2d 677, 686 (1991) (citations omitted). The use simply has to be often enough for the true owner to have notice that a party is asserting an easement. *Id.* at 52, 404 S.E.2d at 686-87.

Here, the record shows that appellee bought the property and used the roadway from 1961 until the mid-1980's when appellant's construction activities completely destroyed the old roadway. Appellee testified that he used the roadway quite often for recreational purposes when he lived nearby and he used the roadway several times per year even after he moved away. The record also shows that other people used the roadway with appellee's permission and that appellee was the person who maintained the roadway for his use and other people's enjoyment. We hold that this evidence was sufficient for a jury to find that appellee had satisfied his burden of showing that his use of the roadway was continuous and uninterrupted for the statutorily required twenty year period.

**VANDERVOORT v. McKENZIE**

[117 N.C. App. 152 (1994)]

## II.

**[4]** Appellant also contends that the trial court erred by admitting testimony of Roland Elliot (hereinafter Elliot) and Burton Murphy (hereinafter Murphy) concerning a dispute between appellant and these two men regarding a separate road. To obtain a new trial based upon an error of the trial court in admitting evidence, the appellant must establish that: (1) he objected to the admission of the evidence at trial; (2) the evidence was inadmissible in law because it was incompetent, immaterial, or irrelevant; and (3) the evidence was prejudicial to appellant's cause of action or defense. *Hunt v. Wooten*, 238 N.C. 42, 45, 76 S.E.2d 326, 328 (1953) (citations omitted).

While appellant occasionally made general objections during appellee's examination of Elliot and Murphy, appellant at times allowed Elliot and Murphy to testify about the same facts without objection. A party waives its objection to a witness' testimony when the party allows the witness to later testify about virtually the same facts without objection. *Hunt v. Wooten*, 238 N.C. App. 42, 49, 76 S.E.2d 326, 331 (1953); *see also* Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 22 (4th ed. 1993). Here, there is no indication from the record that appellant made a line objection to appellee's line of questioning. *See Kenneth S. Broun, Brandis & Broun on North Carolina Evidence* § 22 (4th ed. 1993) (stating that "a general objection ordinarily cannot operate as a line objection"). Having failed to make a line objection which would have applied to any subsequent admission of evidence falling within the same line of questioning, appellant waived his right to preserve his objections for appeal. Accordingly, this assignment of error fails.

## III.

**[5]** Finally, appellant contends that the trial court erred by excluding the deposition of Samuel L. White (hereinafter White). Appellant claimed that he served White with a subpoena to testify at appellant's trial, but when the trial court was prepared to hear White's testimony, appellant's attorney told the trial court that White's wife had called and said that he was ill and unable to attend. Rule 32(a)(4) of the North Carolina Rules of Civil Procedure provides that a party may use the deposition of an unavailable witness if, among other reasons, the witness is ill, at a greater distance than 100 miles from the place of trial, or the party offering the deposition has been unable to procure the attendance of the witness by subpoena. G.S. 1A-1, Rule 32(a)(4). "A written note or report from a physician should be sufficient to sup-

VANDERVOORT v. McKENZIE

[117 N.C. App. 152 (1994)]

port a finding of illness or infirmity." G. Gray Wilson, *North Carolina Civil Procedure*, Vol. 1, § 32-5, n.44 (1989). Here, appellant's attorney orally stated that he had received the information that White was ill from White's wife over the telephone. Appellant's attorney offered no other form of proof concerning White's alleged illness although the record indicates that appellant's attorney had known that White was ill since the previous Monday morning. We hold that appellant's attorney failed to offer sufficient proof of White's alleged illness and that the trial court did not abuse its discretion in refusing to admit White's testimony under this provision of Rule 32(a)(4).

Because appellant's attorney could not adequately satisfy the trial court that White was ill, appellant's attorney also sought to have White's deposition admitted pursuant to Rule 32(a)(4) by asserting that White was more than 100 miles from the place of trial. Appellant's attorney asked the court to take judicial notice of this fact, but the trial court refused. Appellant now asserts that the trial court erred by refusing to take judicial notice that it is over one hundred miles between Marion and Mebane, North Carolina. Rule 201(d) of the North Carolina Rules of Evidence provides that "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." G.S. 8C-1, Rule 201(d). Here, the trial court stated that it did not know the distance between the two cities. Appellant's counsel offered to supply the trial court with a map at the lunch break, but the trial court declined to wait. Although the better practice would have been for the trial court to provide appellant's attorney with time to retain a map, we hold on this record that the trial court did not abuse its discretion by declining to take judicial notice of the distance between Marion and Mebane. Accordingly, we hold that the trial court did not err in refusing to admit White's deposition.

We note that our review has been complicated by the manner in which the record on appeal was compiled and submitted. The parties failed to cooperate in preparation of the record on appeal. Portions of the transcript are omitted leaving the remaining portions disjointed and not logically connected. The absence from the record of exhibits referred to in the record as relevant to the issue of permissive use is particularly disturbing and has contributed to the difficulty of review of the trial court's decisions.

Affirmed.

Judges ORR and JOHN concur.